**Lena SAFARIAN, Petitioner,**

v.

**Alberto R. GONZALES, Attorney General, Respondent.**

**No. 03–70151.**

United States Court of Appeals, Ninth Circuit.

Argued & Submitted June 8, 2005.

Decided July 18, 2005.

---

Lena Safarian, Glendale, CA, pro se.

Alexander Morales, Law Offices of Boghosian & Morales, Glendale, CA, for Petitioner.

CAC–District Counsel, Esq., Office of the District Counsel, Department of Homeland Security, Los Angeles, CA, Ronald E. LeFevre, Chief Counsel, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, Richard M. Evans, Esq., Allen W. Hausman, Attorney, Papu Sandhu, Esq., Blair T. O'Connor, Esq., DOJ—U.S. Department of Justice, Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: B. FLETCHER, RYMER, and FISHER, Circuit Judges.

## MEMORANDUM *

Lena Safarian, a 76–year old native and citizen of Armenia, petitions for review of the Board of Immigration Appeals' ("BIA") summary affirmance of the immigration judge's ("IJ") denial of her application for asylum and withholding of deportation. We grant the petition and remand.

We are compelled to conclude that the IJ's reasoning is not supported by substantial evidence. *Gui v. INS,* 280 F.3d 1217, 1225 (9th Cir.2002). Safarian's testimony and the corroborating evidence in the record support her contention that she was repeatedly interrogated, threatened, humiliated, and eventually arrested on account of her political opinion.

The IJ relied on three reasons to find Safarian not credible: (A) the IJ found her testimony and asylum application to be inconsistent regarding the number of times she was arrested; (B) the IJ found inconsistencies between Safarian's testimony and that of her son, Vartanian, regarding the number of days that Safarian was detained; and (C) the IJ faulted Safarian for not providing corroborative documentation establishing her involvement in the Dashnak Party and her work for the Party's print shop.

■ We find that the so-called inconsistency between the asylum application and Safarian's testimony is non-existent, as it merely reflects confusion of the terms "detained" and "arrested." Moreover, because Safarian testified that *fewer* arrests occurred than indicated in her asylum application, "any discrepancy cannot be viewed as an attempt by the applicant to enhance [her] claims of persecution, and

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

thus has no bearing on credibility." *Singh v. Ashcroft*, 362 F.3d 1164, 1171 (9th Cir. 2004) (internal quotation marks and citation omitted).

■ Similarly, we find that Vartanian's testimony is substantially consistent with Safarian's testimony, and his vagueness regarding the duration of his mother's incarceration does not support the IJ's finding that she is not credible. *Cf. Singh v. Gonzales*, 403 F.3d 1081, 1090–91 (9th Cir. 2005) (father stated that son was arrested in January, 1994, while son testified that he was arrested at the end of December, 1993); *see also Wang v. Ashcroft*, 341 F.3d 1015, 1021–22 (9th Cir.2003) (husband's failure to remember exact dates of applicant's forced abortions reveals nothing about the applicant's fear of persecution and does not undermine her credibility). Vartanian also explained that he had some difficulty remembering the exact duration of his mother's time in custody due to the passage of time. Although the IJ dismissed this explanation out of hand, it is reasonable considering that the merits hearing took place over five years after the events in question. The IJ also failed to take into account the fact that the rest of Vartanian's testimony fully corroborates his mother's testimony regarding her political work, the harassment she faced while teaching, and the events that caused her to flee Armenia. That the two reports are substantially consistent, even though both were given several years later, supports rather than detracts from Safarian's credibility. *Singh*, 403 F.3d at 1090.

■ Finally, the IJ erred in asserting that Safarian provided *no* corroborating evidence of her affiliation with Dashnak or SPURK, as the record does include some corroborating evidence. Moreover, the IJ failed to explain why he doubted Safarian's testimony regarding her membership in and work for the Dashnak Party. *Cf. Salaam v. INS*, 229 F.3d 1234, 1239 (9th Cir.2000) (concluding that petitioner should not have been required to produce evidence of organizational membership, political fliers, or medical records). Where, as here, "each of the IJ's or BIA's proffered reasons for an adverse credibility finding fails, [this court] must accept a petitioner's testimony as credible," and further corroboration is not required. *Kaur v. Ashcroft*, 379 F.3d 876, 890 (9th Cir.2004).[1]

Because the IJ did not make additional findings on the merits of Safarian's claims for asylum and withholding of removal, we remand to the BIA so that the agency can determine in the first instance whether, accepting her testimony as true, she is eligible for relief. *See INS v. Ventura*, 537 U.S. 12, 16–17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam).

---

1. The IJ concluded that Safarian should have been able to obtain documents that establish her long-time active involvement in the Dashnak party or SPURK print shop. The REAL ID Act of 2005 provides that this court may not reverse a trier of fact's determination "with respect to the availability of corroborating evidence ... unless the court finds ... that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." Pub.L. No. 109–13 § 101(e), 119 Stat. 231, 305 (May 11, 2005). Although this provision applies to "all cases in which the final administrative removal order is or was issued before, on, or after" the date of enactment, *id.* at § 101(h)(3), 119 Stat. at 305–06, this case is unaffected because the question of whether corroborating evidence is "available" is distinct from the threshold question presented here, i.e., whether the IJ properly required Safarian to provide corroborating evidence. Although the REAL ID Act of 2005 also contains provisions that change the conditions under which an IJ may require an applicant to provide corroborating evidence, those provisions do *not* apply retroactively. *Id.* at § 101(h)(2), 119 Stat. at 305.

PETITION FOR REVIEW GRANT-ED; REMANDED.

RYMER, Circuit Judge, dissenting.

The immigration judge did not believe Safarian, did not believe that Safarian was detained, and thus, did not believe the entire claim. Substantial evidence supports this finding. Safarian represented in her application for asylum that she was regularly arrested and a section leader in the Dashnak party, but testified that she was a proofreader who was arrested once. She said at the hearing (May 30, 1996) that she did not know what was written in her application, but she had testified under oath on June 28, 1996 that she was familiar with the information in her application, had signed it, and that it was true and complete. She had been working for the party for decades, yet provided no documentation of her involvement. She stated in her declaration (October 29, 1996) that if she had known that she was applying for asylum instead of for an employment authorization form, she "would have submitted a lot of documents and detailed information, since I arrived in the United States with the only purpose to apply for Political Refugee Status," yet at the hearing she testified that she didn't have any documentation because the KGB took her papers when they accused her of smuggling undeclared jewelry. At the same time, she testified (inconsistently) that the papers were in a briefcase that she kicked away when she was arrested at the airport and that was picked up by two members of the party who accompanied her to the airport. Her explanation for not retrieving the papers—that she was under house arrest—does not compute because that just means that she couldn't leave, not that others couldn't visit. She testified that the agents took everything she had and told her she was smuggling, which appears to be true because she was taking jewelry out of the country contrary to law, and testified both that they took her documents and passport and that they didn't. She testified that she was held in the KGB building for 17 days and in the hospital for three, but Safarian's son (who claimed to be involved in her release) testified that she was held for three or four days. Later he said maybe seven, then said he didn't remember, then said 17, 18, 20, about a month, maybe more than a month. All of these things go to the heart of Safarian's asylum claim, amply support the IJ's determination that Safarian fabricated evidence for the purpose of obtaining asylum, and do not compel a finding that Safarian is eligible for asylum on any of the statutory grounds.