Rima HOVHANNISYAN, Petitioner,

v.

Alberto GONZALES,* Attorney
General, Respondent.

No. 02-74291.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 9, 2005.

Decided July 28, 2005.

---

* Alberto Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R.App. P. 43(c)(2).

Susan E. Hill, Esq., Hill & Piibe, Los Angeles, CA, for Petitioner.

Ronald E. LeFevre, Chief Counsel, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, Richard M. Evans, Esq., Patricia A. Smith, DOJ–U.S. Department of Justice, Civil Div./Office of Immigration Lit. Washington, DC, for Respondent.

Before LEAVY, GRABER, and CALLAHAN, Circuit Judges.

### MEMORANDUM **

Rima Hovhannisyan (Petitioner), a native and citizen of Armenia, petitions for review of the summary affirmance by the Board of Immigration Appeals (BIA) of her appeal from the decision of the immigration judge (IJ) denying her application for asylum, withholding of deportation, and relief under the Convention Against Torture (CAT). We review for substantial evidence. *Cordon–Garcia v. INS*, 204 F.3d 985, 990 (9th Cir.2000). We grant the petition.

Petitioner's husband, a citizen of Armenia, was born in the Aziri district of Iran. Petitioner claims that she was persecuted by Armenian nationalists on account of her husband's ethnicity and her mixed marriage status. Following three incidents

with nationalists in 1998, Petitioner came to the United States in November 1998. Her husband and adult daughter went to Russia. The daughter returned to Armenia to live with extended family in a different village. Her son was forcibly inducted into the Armenian army and remains in Armenia.

The IJ denied Petitioner's application for asylum, concluding that Petitioner's testimony was "exaggerated, if not fabricated," and "[t]here's nothing in the record other than the respondent's own self-serving and contradictory claims."

■ The IJ concluded that Petitioner's claim was not supported by the State Department country conditions report in the record. The report, however, states that Armenians who immigrated from Iran have advanced claims of mistreatment based upon their ethnicity. The IJ failed to note that Petitioner's husband was born in the Azeri district of Iran, as noted on his passport and marriage certificate. Petitioner's testimony of her husband's difficulties and the family's mistreatment is not inconsistent with the country reports. *Zheng v. Ashcroft*, 397 F.3d 1139, 1145 (9th Cir.2005) (concluding that petitioner's testimony was not inconsistent with the State Department reports).

■ The IJ noted an inconsistency between Petitioner's asylum application, wherein she stated that her husband and daughter left for Russia after November 1998, and her testimony, where she stated that her husband and daughter left for Russia in October 1998. This inconsistency does not go to the heart of Petitioner's claim and does not enhance her claim of persecution. *See Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 660 (9th Cir.2003);

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

*Shah v. INS,* 220 F.3d 1062, 1068 (9th Cir.2000).

The IJ noted that Petitioner presented no evidence other than her "self-serving claim." Petitioner, however, presented copies of passports, her marriage certificate, and a medical report. Moreover, "[t]estimony should not be disregarded merely because it is uncorroborated and in the individual's own interest." *Murphy v. INS,* 54 F.3d 605, 611 (9th Cir.1995).

■ The IJ noted that Petitioner's manner of obtaining a tourist visa was "questionable in nature." Manner of entry, however, is not a relevant factor in determining eligibility for asylum. 8 U.S.C. § 1158(a)(1); 8 U.S.C. § 1225(b). The IJ also noted that Petitioner had stated that she wanted to keep her family together, yet she did not explain why she did not go with her husband and daughter to Russia. Petitioner's personal choices about her marriage and living arrangements are not useful to evaluate credibility unless they reflect an inconsistency in a relevant portion of the applicant's testimony. *Damaize–Job v. INS,* 787 F.2d 1332, 1337 (9th Cir.1986).

■ Petitioner testified that her husband was terminated from his job because he was Iranian, and thereafter he was provided with a small state pension. The IJ found that the Petitioner's husband was not fired, but given "forced retirement" and a "fair pension." This finding is based upon speculation and conjecture because nothing in the record suggests that termination would preclude receiving a state pension. *See Shah,* 220 F.3d at 1071.

■ The IJ noted an inconsistency between Petitioner's asylum application and her testimony as to whether she was present when her son was taken into the military. She stated in her application [as written]: "4 men came to us they beat me

and my husbond [sic], one of them took my daughter to the next room . . . they did not let us go in. When they left they took my son with them." She testified: "I wasn't home. I came over and I saw my husband wounded on his forehead bleeding and my son was taken away." The asylum application was not mentioned at all during the hearing, and neither the government counsel nor the IJ asked Petitioner to explain the inconsistency regarding whether she was present when her son was taken. *See Campos–Sanchez v. INS,* 164 F.3d 448, 450 (9th Cir.1999) ("The logical corollary to the requirement that the BIA must address the explanations offered by a petitioner is that the BIA must provide a petitioner with a reasonable opportunity to offer an explanation of any perceived inconsistencies that form the basis of a denial of asylum.").

■ The asylum application stated that Petitioner's son was taken in September 1998, and Petitioner testified that her son was taken when the nationalists came to her home in June 1998. Again, counsel and the IJ failed to ask Petitioner to explain this inconsistency. Furthermore, the inconsistency in dates as to when the son was forcibly inducted does not go to the heart of Petitioner's claim that she and her family were persecuted because of her husband's Iranian ethnicity. *See Singh v. Ashcroft,* 362 F.3d 1164, 1171 (9th Cir. 2004) (inconsistencies that cannot be viewed as attempts to enhance claims of persecution have no bearing on credibility).

The IJ also noted an inconsistency between Petitioner's asylum application, wherein she claimed she didn't know what happened to her son when he was taken by the nationalists, and her testimony, where she stated that "[h]is friend just got some kind of message from him and he told us that, 'Don't worry. He's okay.'" Petitioner was not asked to explain this possible

inconsistency. Furthermore, it is entirely plausible that she did not know what happened to her son on the day he was taken, and then later learned that her son was, in fact, serving in the military and was unharmed.

■ Finally, the IJ noted that Petitioner's adult daughter who was beaten and mistreated chose to return to Armenia and has lived without problems. Petitioner testified that the daughter returned to live with relatives in a town about 60 kilometers from their previous home. The relatives live in the town where Petitioner was born. The IJ concluded, "Apparently there is safe haven in her own ... home town and village where everyone knows and has cared for them and provided for them." This conclusion is based upon speculation because there is no evidence in the record that everyone "has cared for them and provided for them" in this village. Furthermore, the IJ fails to acknowledge that Petitioner's claims of persecution are based upon her marriage to an ethnic Iranian. The daughter returned to another village and was not residing in a mixed ethnicity household.

None of the adverse credibility grounds relied upon by the IJ is supported by substantial evidence. The IJ did not determine whether the Petitioner's testimony, if credible, established past persecution or a well-reasoned fear of persecution, and we leave that determination for a further proceeding. We therefore remand to the agency to determine Petitioner's eligibility for asylum, withholding of removal, and CAT relief. *See Wang He v. Ashcroft,* 328 F.3d 593, 603–04 (9th Cir.2003).

**PETITION FOR REVIEW GRANTED; REMANDED.**

CALLAHAN, Circuit Judge, dissenting.

I find that the IJ's adverse credibility findings is supported by substantial evidence, and therefore dissent.

An appellate court is required to give the IJ's eyewitness perspective of the parties great deference. *See Kataria v. INS,* 232 F.3d 1107, 1112 (9th Cir.2000). "We must affirm if the BIA's determination is 'supported by reasonable, substantial, and probative evidence,' and we reverse only if 'the evidence [Hovhannisyan] presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution.'" *Singh v. Ashcroft,* 301 F.3d 1109, 1111 (9th Cir.2002) (quoting *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 483–84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)).

Although the IJ's decision may not have been a model of clarity, the adverse credibility determination was supported by clear and cogent reasons in the record. In particular, Hovhannisyan claimed in her asylum application that, on September 1, 1998, four men came to her home and beat her and her husband, raped her daughter, and took her son, claiming that they were conscripting him into the military. In her testimony before the IJ, however, she claimed that, in June 1998, when she was not home, several men came and beat her husband and then took her son away.

The majority contends that the IJ erred by not offering Hovhannisyan an opportunity to explain these inconsistencies. Although we have previously held that vague or ambiguous testimony cannot form the basis of an adverse credibility determination where an alien is not given a chance to clarify her testimony, *see Guo v. Ashcroft,* 361 F.3d 1194 (9th Cir.2004), Hovhannisyan's internally inconsistent statements are more than merely vague or ambiguous. It is logically impossible for Hovhannisyan both to have been present, and away from her house, when her son was conscripted

into the military. Because her testimony and her asylum application is internally inconsistent, it is doubtful that it could have been reconciled with further explanation.

Where an asylum applicant's accounts are inherently self-contradictory, an IJ cannot be said to have erred by not asking her to attempt to clarify a logical impossibility, particularly where, as here, the applicant is represented by retained counsel.[1] Certainly, the very nature of the alleged forced conscription of petitioner's son is the sort of traumatic event that tends to be branded in a person's memory.

In any event, the inconsistencies in Hovhannisyan's presentation concerning the conscription of her son and other events preclude one from finding that the IJ was compelled to find her credible. I would affirm the IJ.

---

1. It is noteworthy that the IJ did ask for clarification on many of Hovhannisyan's other statements that he regarded as confusing or ambiguous.

