**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FONES4ALL CORPORATION,
                    *Petitioner,*

VERIZON; AT&T,
                    *Intervenors,*

           v.

FEDERAL COMMUNICATIONS
COMMISSION; UNITED STATES OF
AMERICA,
                    *Respondents.*

No. 06-75388

FCC No.
WC05-261

OPINION

On Petition for Review of an Order of the
Federal Communications Commission

Argued and Submitted
September 12, 2008—Pasadena, California

Filed December 16, 2008

Before: Mary M. Schroeder and Johnnie B. Rawlinson,
Circuit Judges, and Brian E. Sandoval,* District Judge.

Opinion by Judge Schroeder

*The Honorable Brian E. Sandoval, United States District Judge for the District of Nevada, sitting by designation.

16483

**COUNSEL**

Michael B. Hazzard, Washington, DC, for petitioner Fones4All Corporation.

Scott H. Angstreich, Washington, DC, for the intervenors.

James M. Carr, Washington, DC, for respondents Federal Communications Commission, et al.

**OPINION**

SCHROEDER, Circuit Judge:

This is a petition for review of a decision of the Federal Communications Commission ("FCC") denying Fones4All's petition for forbearance from the application of an FCC regulation. That regulation removed any requirement that incumbent local exchange carriers ("ILECs") provide unbundled services to competitive local exchange carriers ("CLECs"), like the petitioner, Fones4All. The principal issue for us to resolve relates, not to the merits of the regulation, but to Fones4All's contention that the order denying its petition was untimely, and that the petition therefore must be "deemed granted" within the provisions of the Telecommunications Act of 1996. *See* 47 U.S.C. § 160(c).

The timeliness issue involves the practice of the FCC of announcing a decision on the last possible day and then "backdating" the later explanation for that decision to the date on which it was announced. We join the D.C. Circuit in holding that a challenge to the practice is not properly before us because it was never raised before the FCC and, therefore, administrative remedies were not exhausted. *See* 47 U.S.C. § 405; *In re Core Commc'ns*, 455 F.3d 267 (D.C. Cir. 2006); *Qwest Corp. v. FCC*, 482 F.3d 471 (D.C. Cir. 2007).

On the merits, this petition must be viewed in light of a decade-long FCC process aimed at ensuring competition in the telecommunications market between those carriers in existence at the time of the passage of the Telecommunications Act of 1996, the ILECs, and the newcomers entering the market after that enactment, the CLECs. *See* 47 U.S.C. § 251(h); 47 C.F.R. § 61.26(a)(1). That process culminated in the Triennial Review Remand Order of 2005 ("TRRO"), in which, after full notice and comment, the FCC required CLECs to end their dependence on unbundled services provided by the older, better established ILECs. Prior to the TRRO, Fones4All

had contracts to receive services from ILECs, the intervenors Verizon and AT&T. In seeking to get out from under the regulation implementing the 2005 TRRO, petitioner is essentially trying to fight one more round in a bout that was lost in 2006, when the D.C. Circuit upheld the TRRO. *Covad Commc'ns Co. v. FCC*, 450 F.3d 528 (D.C. Cir. 2006).

## I.  Statutory and Regulatory Background

The Telecommunications Act of 1996 sought, among other things, to promote competition and mitigate ILECs' natural advantages over new market entrants. *Covad*, 450 F.3d at 531; *Sprint Telephony PCS, L.P. v. County of San Diego*, 543 F.3d 571, 575 (9th Cir. 2008) (en banc). To help achieve that goal, the Act gave the FCC the power to require ILECs to give CLECs access to network elements on an unbundled basis. 47 U.S.C. § 251(c)(3). CLECs would also receive this access at a low cost, the so-called TELRIC pricing, which stands for Total Element Long-Run Incremental Cost. *Verizon Commc'ns Inc. v. FCC*, 535 U.S. 467, 523 (2002); 47 C.F.R. § 51.505(b) (defining TELRIC pricing). Before the FCC could require unbundling, however, the Act directed the FCC to consider whether failure to provide unbundled access would impair CLECs from entering the market. 47 U.S.C. § 251(d)(2). Obviously, CLECs desired widespread unbundled access, and the lower costs associated with it, while ILECs did not want to provide it. *Covad*, 450 F.3d at 532-33. This opposition led to what the D.C. Circuit characterized as a decade-long "tug-of-war between CLECs advocating more unbundling and ILECs advocating less." *Id.*

Three times the FCC tried, unsuccessfully, to implement the unbundling provisions of the Telecommunications Act. Its fourth attempt, in 2006, was finally upheld in *Covad*. *Id.* at 531 ("[T]he Commission's fourth try is a charm."). In its first try, the FCC issued a set of local competition rules in August of 1996. *Implementation of the Local Competition Provisions in the Telecomms. Act of 1996*, First Report and Order ("Local

Competition Order"), 11 F.C.C.R. 15499 (1996). The rules then adopted unbundled access only "if the quality of the service the entrant can offer, absent access to the requested element, declines and/or the cost of providing the service rises." *Id.* at 15643. The Supreme Court vacated these unbundling rules, holding that the Commission had failed properly to conduct the impairment analysis. *AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 389-92 (1999). The FCC's second attempt to provide unbundled access met with no more success. *Implementation of the Local Competition Provisions of the Telecomms. Act of 1996*, 15 F.C.C.R. 3696 (1999). The D.C. Circuit vacated those rules in May of 2002. *U.S. Telecomm. Ass'n v. FCC*, 290 F.3d 415 (D.C. Cir. 2002) ("*USTA I*"). The court instructed the FCC to make more nuanced unbundling determinations. *Id.* at 422, 426. Following the *USTA I* remand, the FCC attempted to make these nuanced determinations. *In the Matter of Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers*, Report and Order and Order on Remand and Further Notice of Proposed Rulemaking, ("Triennial Review Order"), 18 F.C.C.R. 16978, 17035 (2003). The FCC eliminated unbundling requirements for CLECs that served enterprise customers, such as larger businesses, but kept other unbundling requirements in place. The former determination was upheld, *U.S. Telecomm. Ass'n v. FCC*, 359 F.3d 554, 586-87 (D.C. Cir. 2004) ("*USTA II*"), but the latter was not, *id.* at 564-71.

On August 20, 2004, the FCC released an Interim Order that required ILECs to continue to adhere to any commitments they had made to provide unbundled access to CLECs. *Order and Notice of Proposed Rulemaking*, ("Interim Order and Triennial Review Remand NPRM"), 19 F.C.C.R. 16783, 16783-84 (2004). With respect to that NPRM, the FCC sought "comment on how to respond to the D.C. Circuit's *USTA II* decision in establishing sustainable new unbundling rules." *Id.* at 16788. The comment period was held open for twenty-one days. *Id.* at 16783. Reply comments could be filed up to thirty-six days after publication in the Federal Register. *Id.*

The FCC received and considered comments, and the process culminated in the TRRO. *In the Matter of Unbundled Access to Network Elements*, Order on Remand ("Triennial Review Remand Order"), 20 F.C.C.R. 2533 (2005). Fones4All had full opportunity to comment, but this record does not reflect whether it did.

The Commission then determined that CLECs would generally not be impaired if they lost unbundled access to mass market switching. *Unbundled Access to Network Elements; Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers*, 70 F.R. 8940, 8942 (2005). Thus most CLECs had become competitively viable and no longer needed unbundled access. The goal of viable market competition between CLECs and ILECs had been achieved; it was no longer necessary for ILECs to provide unbundled access to CLECs because, generally, CLECs could provide their own. Accordingly, the FCC amended regulation § 51.319(d) to terminate mandatory unbundling of mass market switching.

In *Covad Communications Co. v. FCC*, the D.C. Circuit reviewed the TRRO and upheld the FCC's actions, including the FCC's adoption of regulation § 51.319(d). 450 F.3d 528. It is that regulation that Fones4All now challenges in this proceeding, because it wants to continue enjoying low-cost access provided by the ILECs.

Regulation § 51.319(d) provides as follows:

(i) An incumbent LEC [ILEC] is not required to provide access to local circuit switching on an unbundled basis to requesting telecommunications carriers for the purpose of serving end-user customers using DS0 [mass market] capacity loops.

(ii) Each requesting telecommunications carrier shall migrate its embedded base of end-user custom-

ers off of the unbundled local circuit switching element to an alternative arrangement within 12 months of the effective date of the Triennial Review Remand Order.

47 C.F.R. § 51.319(d)(2)(i)-(ii). This regulation enables ILECs to disavow any contractual obligations for unbundled access to mass market switching. The regulation flows directly from the TRRO's findings that CLECs are no longer impaired from entry into the market.

## II.  Procedural Background of this Case

At issue here is the FCC's denial of Fones4All's petition for forbearance from the application of regulation § 51.319(d). The Telecommunications Act allows entities aggrieved by particular regulations to file petitions for forbearance. This course of action is governed by Section 10 of the Act. *See* 47 U.S.C. § 160. Petitions for forbearance ask the FCC, as the name suggests, to forbear from applying a certain regulation to the entity. The FCC is required to grant a petition for forbearance if the FCC determines that all three of the following requirements are met:

> (1) enforcement of such regulation or provision is not necessary to ensure that the charges, practices, classifications, or regulations by, for, or in connection with that telecommunications carrier or telecommunications service are just and reasonable and are not unjustly or unreasonably discriminatory; [and]
>
> (2)  enforcement of such regulation or provision is not necessary for the protection of consumers; and
>
> (3)  forbearance from applying such provision or regulation is consistent with the public interest.

47 U.S.C. § 160(a).

Section 10 sets out strict time limits within which the FCC must act on a petition for forbearance. If the FCC does not timely deny the petition, it is "deemed granted" as a matter of law. 47 U.S.C. § 160(c). The base time period in which to deny a petition is one year from its filing date, *id.*, but the Commission may extend the initial one-year period by an additional 90 days. If it does so, the FCC has one-year-plus-90-days in which to deny the petition before it is "deemed granted." *Id.* The statute specifically provides as follows:

> Any telecommunications carrier, or class of telecommunications carriers, may submit a petition to the Commission requesting that the Commission exercise the authority granted under this section with respect to that carrier or those carriers, or any service offered by that carrier or carriers. Any such petition shall be deemed granted if the Commission does not deny the petition for failure to meet the requirements for forbearance under subsection (a) of this section within one year after the Commission receives it, unless the one-year period is extended by the Commission. The Commission may extend the initial one-year period by an additional 90 days if the Commission finds than an extension is necessary to meet the requirements of subsection (a) of this section. The Commission may grant or deny a petition in whole or in part and shall explain its decision in writing.

47 U.S.C. § 160(c).

Fones4All filed its petition for forbearance on July 1, 2005, seeking relief from regulation § 51.319(d). On June 8, 2006, within the initial one-year period allotted by Section 10, the FCC's Chief of the Wireline Competition Bureau ("WCB") granted the one-time 90-day extension, making the new deadline for action September 28, 2006. After the WCB granted the extension, Fones4All filed an Application for Review of

the extension, asking the FCC to determine whether the WCB had the authority to extend time and whether the extension was truly necessary. At that time, the FCC took no action on Fones4All's Application for Review. Then, on September 28, 2006, the FCC issued a press release indicating that the commissioners had voted to deny Fones4All's petition for forbearance. The next day, September 29, 2006, one day after the maximum one-year-plus-90-day deadline for agency action had passed, the FCC released its "Memorandum Opinion and Order" denying the petition for forbearance. The FCC release said that the Memorandum Opinion and Order had been adopted on September 28, 2006.

In its Memorandum Opinion and Order denying Fones4All's petition, the FCC ruled that the Chief of the WCB acted properly, pursuant to delegated authority, to extend the one-year deadline to one-year-plus-90-days, and that the FCC, by voting on September 28, 2006, had denied the petition before it could be "deemed granted" as a matter of law under 47 U.S.C. § 160(c). The FCC also determined that Fones4All's petition was "procedurally defective," in that it did not seek relief that could be granted, because forbearance from Regulation § 51.319(d) would not affirmatively require ILECs to provide Fones4All with unbundled access to mass market switching, which was the relief that Fones4All sought in its petition for forbearance. Instead, the FCC reasoned, if it were to grant the petition for forbearance, there would be a "vacuum," meaning that Regulation § 51.319(d) would not require Fones4All to move its customers off the ILECs' unbundled switching, but there would still be no legal requirement that ILECs provide Fones4All's customers with access to that unbundled switching. The FCC also denied the petition because it found that Fones4All had not met any of the three Section 10 statutory requirements for forbearance, including a showing that forbearance was necessary to protect competition or consumers and that forbearance was consistent with the public interest.

Fones4All filed a timely petition for review with this Court. Most of Fones4All's arguments here relate to whether its petition for forbearance should have been "deemed granted" as a matter of law: Petitioner contends the FCC's use of the "back-dating" procedure was improper, and that the FCC thus did not act within the statutory time limits set out by Congress in the Act. 47 U.S.C. § 160(c).

Fones4All also maintains that, if we do not agree that its petition should have been "deemed granted" by virtue of the claimed procedural irregularities of the denial, then on the merits, the FCC's Memorandum Opinion and Order is an unreasonable application of the statutory requirements of Section 10 and that the FCC should have granted Fones4All's petition for forbearance. 47 U.S.C. § 160(a).

## III.  Analysis

### A.  Backdating

**[1]** Under applicable regulations, the FCC may "designate an effective date that is either earlier or later in time than the date of public notice of such action." 47 C.F.R § 1.103(a). This procedure of releasing documents with two dates — a release date and an adoption date — can be traced to the time of enactment of the Telecommunications Act of 1996 itself. 47 C.F.R. § 1.103 (1996). The FCC has also backdated decisions on petitions for forbearance for quite some time. *See, e.g.*, *In the Matter of Petition for Forbearance of the Indep. Tel. & Telecomms. Alliance*, 14 F.C.C.R. 10840 (1999) (released on June 30, 1999, but adopted on May 18, 1999). Indeed, the FCC maintains that FCC orders have, for more than 30 years, routinely reflected two dates in their captions: the adoption date, when the Commission voted, and the release date, when the Commission released its written order.

The problem that Fones4All brings to us, however, is that the release date of the written order was outside the allowable

time limits for an FCC decision, and thus Fones4All contends its forbearance petition must be "deemed granted" under Section 10(c). 47 U.S.C. § 160(c). Fones4All did not make this argument to the FCC, and the Commission therefore did not have an opportunity to pass on it in this case.

**[2]** It is undisputed that, assuming the one-year deadline was properly extended, the Commission's vote, as announced in the press release, was timely, but the subsequent order explaining the decision was backdated to comply with the deadline. The situation is one of first impression in this circuit, but the D.C. Circuit has at least twice encountered a similar set of facts involving backdating. *See Core*, 455 F.3d at 274-75; *Qwest*, 482 F.3d at 473.

In *Core*, the FCC issued a press release indicating the Commission's vote took place on October 8, 2004, but the final order did not come until ten days later, October 18, 2004, which was approximately one week after the deadline for action had passed. *Core*, 455 F.3d at 274-75. The FCC backdated the order to October 8, 2004, the date of the vote and press release. *Id.* In *Qwest*, the FCC issued the press release on September 16, 2005, the last day before the petition would be "deemed granted" as a matter of law, but the FCC did not release the written order until December 2, 2005, approximately seventy-seven days later. *Qwest*, 482 F.3d at 473. The FCC backdated that order too. *Id.*

**[3]** In its review of the orders, the D.C. Circuit did not reach the merits of the backdating issue in either case. Instead, the court held that it lacked jurisdiction to decide whether the petition had been "deemed granted" because the petitioners had not given the Commission an opportunity to pass on the issue. *Core*, 455 F.3d at 276; *Qwest*, 482 F.3d at 474. In each case, the D.C. Circuit relied on Section 405 of the Act, which provides that "[t]he filing of a petition for reconsideration shall not be a condition precedent to judicial review of any such order [of the FCC] . . . except where the party seeking

such review . . . relies on questions of fact or law upon which the Commission . . . has been afforded no opportunity to pass." 47 U.S.C. § 405.

In this case, as it did before the D.C. Circuit, the FCC takes the position that Fones4All cannot challenge the backdating practice, and hence take advantage of the "deemed granted" provision, without first presenting the argument to the Commission. This is in accord with standard administrative law principles that the Supreme Court has recognized. Exhaustion "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992). The D.C. Circuit has recognized that the statute in this case, Section 405, requires exhaustion to "afford the Commission the initial opportunity to correct errors in its decision or the proceeding leading to decision." *Qwest*, 482 F.3d at 475 (citations omitted). Allowing the FCC to pass on the backdating issue serves the interests of the courts as well. It helps "produce a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (citation omitted). Requiring exhaustion generally makes good sense, because the reviewing court needs a full and adequate understanding of the reasons for an agency's decision and for its rejection of arguments that may be made by those aggrieved by the agency decision.

**[4]** Fones4All, however, contends that exhaustion would have been futile. It is true that "futility" is a well-established principle in administrative common law absent Congressional directive. Courts have not insisted upon exhaustion where it would clearly be of no avail. "Exhaustion of administrative remedies is not required where administrative remedies are inadequate or not efficacious, [or] where pursuit of administrative remedies would be a futile gesture . . . ." *SE Alaska Conservation Council, Inc. v. Watson*, 697 F.2d 1305, 1309 (9th Cir. 1983); *see also Singh v. Ashcroft*, 362 F.3d 1164, 1169 (9th Cir. 2004).

**[5]** In this case, the requirement of exhaustion is statutory. Fones4All, therefore, must urge this court to recognize futility as an exception to Section 405's exhaustion requirement. Congress, however, has explicitly mandated that the FCC have the "opportunity to pass" on the merits of any challenges to its orders before review may be sought in the Courts of Appeals. In such circumstances, we have held that the futility doctrine is not applicable. "Where a statute specifically requires exhaustion, the requirement is not excused based merely [on] a judicial conclusion of futility." *Sun v. Ashcroft*, 370 F.3d 932, 941 (9th Cir. 2004) (internal quotation marks and citations omitted); *see also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) (Courts of Appeals should "not read futility or other exceptions into statutory exhaustion where Congress has provided otherwise.") (citations omitted). Because the Telecommunications Act does require exhaustion, we cannot rely on a judicially created futility exception to evade the statutory exhaustion requirement.

There is, moreover, no support either in this circuit or in the D.C. Circuit for relieving Fones4All from the exhaustion requirement with respect to its challenge to backdating. In *Qwest*, the petitioner argued that sending the case back to the FCC on exhaustion grounds was futile because the agency's position on backdating was clear, and that the FCC has had, in some sense, an "opportunity to pass" on the backdating issue since it began its backdating process. *Qwest*, 482 F.3d at 476-77. The D.C. Circuit, nevertheless, declined to find exhaustion futile with respect to the single case before it, explaining that "one swallow doesn't make a summer." *Id.* at 477.

Fones4All next argues that, if the Telecommunications Act and administrative law principles required it to present the backdating issue to the Commission first, then it did adequately do so. In its June 28, 2006 Application for Review of the WCB's extension order, Fones4All asked the FCC to "issue an order . . . resolving the Fones4All Petition within the

one-year statutory deadline, as required by Section 10." Also, in an ex parte letter to the FCC, dated after the one-year deadline had passed, counsel for Fones4All entreated that the FCC "should issue some sort of papers describing what it thinks it has done, is doing, or is not doing." Fones4All claims that these documents sufficiently raised the backdating issue to give the FCC an opportunity to pass on it, even though Fones4All did not name or describe the backdating practice.

**[6]** Fones4All is correct insofar as it points out that Section 405 does not require it to afford the agency an opportunity to pass on the issue "in any particular manner" to satisfy the section's exhaustion requirement. *Coal. for Noncommercial Media v. FCC*, 249 F.3d 1005, 1008 (D.C. Cir. 2001). The issue must, however, be "meaningfully raised." *Id.*; *see also Wash. Ass'n for Television and Children v. FCC*, 712 F.2d 677, 681 (D.C. Cir. 1983) (requiring a "fair opportunity" to pass on the issue). Here, Fones4All not only failed to name or describe the backdating process, but it did not specifically object to the FCC's practice of issuing a press release followed by a written order. Nor did Fones4All ever meaningfully assert that it considered the press release ineffective as a denial of its petition. We, therefore, conclude that Fones4All never "meaningfully rais[ed]" backdating issues before the FCC. There has been a failure to exhaust administrative remedies.

## B.   WCB's Authority to Extend Time

Fones4All next challenges the timeliness of the FCC's denial of its petition for forbearance on the ground that the WCB lacked authority to authorize an extension pursuant to Section 10(c). According to Fones4All, that authority is conferred upon the "Commission," not the WCB. 47 U.S.C. § 160(c) ("The Commission may extend the initial one-year period by an additional 90 days if the Commission finds that an extension is necessary to meet the requirement of subsection (a) of this section."). Here Fones4All did exhaust reme-

dies. It objected to the extension by filing an Application for Review on June 28, 2006. Although the FCC made no immediate response, in its September 29, 2006 Memorandum Opinion and Order explaining its earlier vote to deny, the FCC concluded that the WCB had the authority to invoke the limited statutory extension provision. We agree.

**[7]** Under the Act, the FCC may delegate its functions to its subdivisions. *See* 47 U.S.C. § 155(c)(1) (allowing the FCC, "by published rule or by order, [to] delegate any of its functions"). By regulation, the FCC has delegated many of its functions to the Chief of the WCB. *See* 47 C.F.R. § 0.91. In particular, Section 0.91(m) authorizes the WCB to "[c]arry out the functions of the Commission under the Communications Act of 1934, as amended, except as reserved to the Commission . . . ." *Id.* Pursuant to the regulations, however, the WCB may not decide issues of first impression, described as "any applications or requests which present novel questions of fact, law or policy which cannot be resolved under outstanding precedents and guidelines." 47 C.F.R. § 0.291. There is no specific provision reserving the right to grant extensions of time to the commissioners; extensions of time are not generally regarded as presenting novel issues of law or policy.

**[8]** While the petition for forbearance itself may have raised novel issues, the Commission, and not the WCB, decided the merits of the petition. The nature of the underlying petition did not transform a procedural order extending time into a matter presenting novel issues.

**[9]** Moreover, we are interpreting the FCC's regulations, and courts should give "substantial deference to an agency's interpretation of its own regulations." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (citations omitted). Here, in the Final Memorandum Opinion and Order released on September 29, 2006, the FCC has interpreted its own regulations as allowing the Chief of the WCB to issue an order extending time. Because this conclusion is not "plainly erro-

neous or inconsistent with the regulation," this Court should defer, even assuming there were some ambiguity in the underlying regulation. *Id.* (citation omitted).

## C.   Necessity

Fones4All's final challenge to timeliness is its contention that the extension failed to satisfy the statutory mandate requiring some necessity to justify a 90-day extension beyond the one-year limit. Section 10 allows for an extension "if the Commission finds that an extension is necessary to meet the requirements of subsection (a) of this section." 47 U.S.C. § 160(c).

Fones4All's most significant argument in this regard is that the frequency of the FCC's extensions of the time limits suggests that the standard for "necessity" has been reduced to one of administrative expediency. On this record, we can express no opinion concerning the overall practices of the FCC with respect to applying the necessity standard, but we do agree with the FCC there was no violation of the standard in this case. Fones4All's petition was not a typical run-of-the-mill petition for forbearance that seeks relief from a new regulation imposed by the Commission. Here, ironically, the petition sought to reimpose the requirement to provide unbundled access that Regulation § 51.319(d) had abrogated. Fones4All's petition was sufficiently out of the ordinary to justify the extension of the deadline in these proceedings.

**[10]** We cannot, therefore, fault the extension on procedural grounds. We turn to the merits of the petition for forbearance.

## D.   Denial of the Forbearance Petition

**[11]** On the merits, Fones4All is essentially seeking to be relieved from the effects of Regulation § 51.319(d) that ended access to unbundled services. Regulation § 51.319(d) provides as follows:

(i) An incumbent LEC [ILEC] is not required to provide access to local circuit switching on an unbundled basis to requesting telecommunications carriers for the purpose of serving end-user customers using DS0 [mass market] capacity loops.

(ii) Each requesting telecommunications carrier shall migrate its embedded base of end-user customers off of the unbundled local circuit switching element to an alternative arrangement within 12 months of the effective date of the Triennial Review Remand Order.

47 C.F.R. § 51.319(d)(2)(i)-(ii). A grant of the petition would effectively eliminate the requirement that Fones4All transfer its customers off of ILECs' unbundled mass market switching. Fones4All thus seeks to regain the benefits it had under contracts with the intervenor ILECs for access to unbundled switching. The contracts were entered into in a period when ILECs were required to offer unbundled services to the CLECs in order to foster competition.

[12] The difficulty with Fones4All's position now is that forbearance from this regulation would not reinstate the requirement that the ILECs offer unbundled services to the CLECs. Even if Fones4All were not required to migrate its customers off ILEC switching, the ILECs would not be required to provide the switching. It is for that reason that the FCC denied the petition for forbearance, and it is for that reason we must uphold the denial. The decision was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). As the FCC said, "forbearance from Rule 51.319(d) would not give the Petitioner the relief it seeks." The Memorandum Opinion and Order explained that "forbearing from Section 51.319(d) of the Commission's rules results in a void rather than an unbundled local circuit switching requirement."

The end of the old era of unbundled local switching access for the CLECs came with the Triennial Review Remand Order of 2005, the TRRO. That order was subject to full notice and comment, held open for thirty-six days. The FCC received and reviewed comments, and the FCC was convinced that CLECs generally no longer needed unbundled access in order to compete in the telecommunications market. The D.C. Circuit upheld the TRRO in *Covad*. "[T]he Commission reasonably concluded that CLECs are not 'impaired' without unbundled access to MMLS [mass market local switching]." *Covad*, 450 F.3d at 547.

Fones4All quibbles with the elucidation by the FCC of its reasons for denying the petition for forbearance, contending that the FCC failed to explain adequately why Fones4All had failed to meet the requirements of Section 10(a). In this back-handed way, Fones4All tries to contend that the FCC must forbear from applying the order. The Commission, however, did explain its decision with reference to the factors that are statutorily required to be considered. Our review is limited to assuring that that was done. "Our task is to ensure that the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made." *NW Ecosystem Alliance v. U.S. Fish and Wildlife Serv.*, 475 F.3d 1136, 1140 (9th Cir. 2007) (quotation marks and citations omitted). In particular, the FCC concluded that "[e]nforcement of this regulation [51.319(d)] is therefore necessary to foster competition and protect consumers." This Court "is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). In sum, Fones4All's petition for forbearance was not necessary to protect the interests of competition or to protect customers, but only to protect the interests of Fones4All itself.

## IV.   Mootness

[13] There is one final issue to be addressed briefly. Fones4All, having been dependent on the unbundled access to

the ILECs' switching, has lost its customers to other, more stable ILECs and CLECs, in all likelihood as a result of Regulation § 51.319(d). Fones4All is presently in bankruptcy. The FCC suggests that the proceedings before us may now be moot. The issue is whether we could grant any effective relief. *See, e.g.*, *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust*, 109 F.3d 602, 612 (9th Cir. 1997) ("Generally, an appeal will be dismissed as moot when events occur which prevent the appellate court from granting any effective relief even if the dispute is decided in favor of the appellant.") (citation omitted). As the intervenor-ILECs and the FCC point out, the existence and outcome of this litigation could have some impact on the value of the assets of Fones4All in bankruptcy. At least to that extent, and certainly on the administrative record before us, this litigation cannot be said to be moot.

Petition DENIED.