# In re S-B-, Respondent

*Decided November 2, 2006*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  The provisions regarding credibility determinations enacted in section 101(a)(3) of the REAL ID Act of 2005, Div. B of Pub. L. No. 109-13, 119 Stat. 231, 303 (effective May 11, 2005) (to be codified at section 208(b)(1)(B)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1158(b)(1)(B)(iii)), only apply to applications for asylum, withholding, and other relief from removal that were initially filed on or after May 11, 2005, whether with an asylum officer or an Immigration Judge.

(2)  Where the respondent filed his applications for relief with an asylum officer prior to the May 11, 2005, effective date of section 208(b)(1)(B)(iii) of the Act, but renewed his applications in removal proceedings before an Immigration Judge subsequent to that date, the provisions of section 208(b)(1)(B)(iii) were not applicable to credibility determinations made in adjudicating his applications.

FOR RESPONDENT: Ted Sofer, Esquire, New York, New York

BEFORE: Board Panel: HURWITZ, Acting Vice Chairman; MILLER, and GRANT, Board Members.

GRANT, Board Member:

In a decision dated June 16, 2005, an Immigration Judge found the respondent removable and denied his applications for relief based on his claim of persecution.  The respondent has appealed from that decision.  The appeal will be sustained and the record will be remanded to the Immigration Judge for further proceedings.

The Immigration Judge denied the respondent's applications for relief based on an adverse credibility finding, relying on the new provisions regarding credibility determinations enacted in the REAL ID Act of 2005, Div. B of Pub. L. No. 109-13, 119 Stat. 231 (enacted May 11, 2005) ("REAL ID Act").  The REAL ID Act amended section 208(b)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1158(b)(1) (2000), by adding a paragraph that specifies the factors to be considered by the trier of fact in making a credibility determination.  REAL ID Act, § 101(a)(3), 119 Stat. at 303 (to be codified at

section 208(b)(1)(B)(iii) of the Act, 8 U.S.C. § 1158(b)(1)(B)(iii)).[1]  The REAL ID Act provides that its framework for assessing credibility shall "take effect on the date of the enactment of this division [May 11, 2005] and shall apply to applications for asylum, withholding, or other relief from removal made on or after such date."  REAL ID Act, § 101(h)(2), 119 Stat. at 305.

This case presents the question whether the REAL ID Act is applicable to the respondent's applications for relief.  That determination depends on whether the effective date provision for section 208(b)(1)(B)(iii) of the Act refers to the date an application is initially filed with an asylum officer of the Department of Homeland Security ("DHS"), or the date it is subsequently filed with the Immigration Court.[2]  We find that the effective date provision refers to the date the asylum application is initially filed, whether the filing is with an asylum officer or an Immigration Judge.

Prior to being placed in removal proceedings, the respondent filed an asylum application in July 2004 with the DHS.  *See* 8 C.F.R. §§ 1208.4(a)-(b) (2006) (providing that aliens not yet in exclusion, deportation, or removal proceedings may file an application for asylum with the service center servicing the asylum office with jurisdiction over the place of the applicant's residence).  After considering the respondent's application, an asylum officer placed the respondent in removal proceedings by filing a Notice to Appear (Form I-862) in September 2004.  Under current regulations, if an asylum officer does not grant the application for asylum, the DHS must "refer the application to an immigration judge, together with the appropriate charging document, for adjudication in removal proceedings."  8 C.F.R. § 1208.14(c)(1) (2006).  The respondent's application for asylum contains a

---

[1]  Section 208(b)(1)(B)(iii) of the Act provides as follows:

> Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.  There is no presumption of credibility, however, if no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal.

[2]  The Joint Conference report for the REAL ID Act equates the term "made" in the section 101(h)(2) effective date provision with the term "filed."  *See* Conference Report on H.R. 1268, 151 Cong. Rec. H2813, H2871 (daily ed. May 3, 2005) (statement of Rep. Lewis), 2005 WL 1025891.

July 19, 2004, time-stamp reflecting filing with the DHS asylum office and a June 16, 2005, time-stamp reflecting the date the Immigration Judge accepted the respondent's asylum application for filing in Immigration Court.

Since 2003, responsibility for adjudicating asylum claims has been shared by the Department of Homeland Security and the Attorney General.[3] The REAL ID Act reflects this dual system by providing that the Secretary of Homeland Security or the Attorney General may grant asylum to an alien who has applied for asylum in accordance with the requirements and procedures established by the DHS or the Attorney General. Section 208(b)(1)(A) of the Act.

Since 1996, Congress has limited asylum eligibility, with certain exceptions, to an alien who establishes that "the application has been filed within 1 year after the date of the alien's arrival in the United States." Section 208(a)(2)(B) of the Act. This deadline may be met by filing an affirmative application with the asylum office within 1 year of arrival. Such an application may be renewed or refiled in removal proceedings before an Immigration Judge after the 1-year filing deadline has passed. In the context of the 1-year filing deadline, therefore, the general reference to the date the application is filed refers to the date the application is initially filed, whether with an asylum office or with an Immigration Judge. If an asylum application has been filed within 1 year of arrival with an asylum officer, the 1-year deadline does not apply to the date of filing a referred application with an Immigration Judge in removal proceedings.

Similarly, the statute affords employment authorization180 days "after the date of filing of the application for asylum." Section 208(d)(2) of the Act. The employment authorization clock continues to run in a case in which an application is first filed with an asylum officer and then referred to an Immigration Judge for consideration in removal proceedings. 8 C.F.R. §§ 1208.7(b)-(c) (2006). Therefore, this reference to the "filing of the application for asylum" also refers to the date an asylum application is initially filed with an asylum officer or with an Immigration Judge.

As with the 1-year filing deadline and the employment authorization clock, the effective date provision at issue in this case refers generally to the date an application is made. Had Congress intended the statutory credibility provision to apply to applications filed prior to the effective date but then referred for filing with an Immigration Judge after the effective date, it could have so specified. *See, e.g.*, Antiterrorism and Effective Death Penalty Act of 1996,

---

[3] The functions of the Immigration and Naturalization Service were transferred to the DHS pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, effective March 1, 2003. *See Matter of D-J-*, 23 I&N Dec. 572, 573 n.1 (A.G. 2003). Prior to the reorganization, the Service adjudicated affirmative applications for asylum, and the Executive Office for Immigration Review adjudicated applications for asylum filed during the course of exclusion, deportation, or removal proceedings.

Pub. L. No. 104-132, § 421(b), 110 Stat. 1214, 1270 (effective Apr. 24, 1996) (providing that certain amendments "shall take effect on the date of the enactment of this Act and apply to asylum determinations made on or after such date").

We find that the general reference to the date an application is filed in the effective date provision at issue refers to the date an application for asylum is initially filed, whether before an asylum officer or before an Immigration Judge. In this case, the application for asylum was initially filed with an asylum officer prior to the effective date of the REAL ID Act. Therefore the standards for determining credibility in the existing case law, to the extent that they differ from the provisions of section 208(b)(1)(B)(iii) of the Act, should be applied in adjudicating the respondent's applications for relief.[4]

The Immigration Judge based his adverse credibility finding in this case on four factors, two of which involved events tangential to the respondent's claim to mistreatment in Guinea, his country of origin. One of these was the discrepancy between the respondent's statement that he arrived at JFK airport and his witness's statement that he arrived at the Newark airport. A second purported discrepancy was found between the respondent's account of arrests in Guinea-Bissau, a country in which he resided after leaving Guinea, and the Department of State's account of favorable treatment of refugees in Guinea-Bissau.[5]

---

[4] In *Matter of B-*, 20 I&N Dec. 427, 429 (BIA 1991), we held that a final regulation applicable to "*all* applications for asylum or withholding that are filed on or after October 1, 1990" applied to an affirmative asylum application filed with the Immigration and Naturalization Service in 1980 and later filed with the Immigration Court in April 1991. In light of the sweeping changes to immigration law and procedure since *Matter of B-* was decided, we do not find that its reasoning controls the outcome of the issue now before us. Most importantly, the statutory references to the date an asylum application is filed in the 1-year filing deadline and in the employment authorization provisions of current law were not a part of asylum law at the time *Matter of B-* was decided. Moreover, under current practice, if an alien is placed in removal proceedings after a DHS asylum officer considers an application for asylum, the asylum officer refers the application to the Immigration Judge along with the Notice to Appear in removal proceedings. 8 C.F.R. § 208.14(c)(1). At the time *Matter of B-* was decided, an application for asylum or withholding of deportation that was denied by an asylum officer could be renewed before an Immigration Judge in exclusion or deportation proceedings, but was not referred to an Immigration Judge. 8 C.F.R. § 208.18(b) (1991).

[5] A third factor the Immigration Judge relied on was the respondent's omission of any "reference to the death of his father" in the asylum application, which he found significant given the respondent's testimony that his father had been imprisoned and killed on account of political activities. In his asylum application, however, the respondent checked a box indicating that his father was "deceased," with the explanatory note, "in jail." The fourth factor relied on by the Immigration Judge was that the respondent did not provide sufficiently cogent testimony regarding the political process in Guinea.

In making his credibility assessment in this case, the Immigration Judge explicitly relied on the REAL ID Act, stating that he could give consideration to inconsistencies and omissions, "whether or not they go to the heart of the claim." However, under the law of the United States Court of Appeals for the Sixth Circuit, the controlling jurisdiction in this case, an Immigration Judge's adverse credibility determination "must be based on issues that go to the heart of the applicant's claim." *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004); *see also, e.g.*, *Chen v. Gonzales*, 447 F.3d 468, 472 (6th Cir. 2006). Additionally, the Sixth Circuit has held that "[i]f discrepancies 'cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility.'" *Daneshvar v. Ashcroft*, 355 F.3d 615, 623 (6th Cir. 2004) (quoting *Shah v. INS*, 220 F.3d 1062, 1068 (9th Cir. 2000)); *see also Chen v. Gonzales*, *supra*, at 472; *Sylla v. INS*, *supra*, at 926.

As the standards articulated by the Sixth Circuit differ in significant respects from the REAL ID Act credibility provisions when applied to the credibility determination in this case, we will remand the record for an analysis of the respondent's credibility under controlling law of the Sixth Circuit and our precedent decisions.

**ORDER:**  The respondent's appeal is sustained.

**FURTHER ORDER:**  The record is remanded to the Immigration Judge for further proceedings consistent with this decision and for the entry of a new decision.