CALLAHAN, Circuit Judge,
dissenting:
I respectfully dissent from the decision to grant Chen’s petition because, in my view, the IJ’s adverse credibility determination was supported by substantial evidence and the record does not compel a contrary conclusion.
As the majority explains, we are reviewing the IJ’s decision as though it were the opinion of the BIA. See Falcon Carriche v. Ashcroft, 350 F.3d 845, 849 (9th Cir.2003). In doing so, we must accept the IJ’s findings of fact unless the evidence compels a contrary conclusion. See INS v. Elias-Zacarias, 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). This is an extremely deferential standard of review, and it is not enough that the evidence supports a contrary conclusion, or that we would have weighed the evidence differently. See id. To reverse the IJ’s findings, the evidence must be so overwhelming that “any reasonable adjudicator” would be compelled to reach a eon-trary conclusion. 8 U.S.C. § 1252(b)(4)(B). Even though the majority identifies problems with some of the IJ’s findings, the evidence, when viewed in its entirety, does not compel reversal.
Although the majority dismisses discrepancies in the evidence regarding Chen’s age and marital status as “immaterial” or otherwise explainable, these discrepancies go to “the heart” of Chen’s claim because they relate to the basis for his alleged persecution. See De Leon-Barrios v. INS, 116 F.3d 391, 394 (9th Cir.1997). According to Chen, he was persecuted because he and his girlfriend conceived a child out of wedlock and attempted to wed when they were underage. Specifically, he claimed that his girlfriend became pregnant while they were both in high school, that this led to their expulsion from school, and that government officials repeatedly insisted that they terminate the pregnancy. He testified that they obtained a false marriage license, which government officials then confiscated, and that about a month before his girlfriend/wife was about to give birth, officials set an ultimatum for an abortion which led Chen’s mother to arrange his escape from China.
In contrast to this harrowing testimony, Chen told an INS agent at the Miami Airport that he was not married, and that he had come to the United States to work as a waiter, only adding as an apparent afterthought that his girlfriend was pregnant when he left China and that this “was not allowed.” These last two statements do not directly conflict with Chen’s testimony, and he was able to give a plausible explanation for the uncertainty surround *281 ing his marital status, but these inconsistencies, when coupled with other evidence, seriously call into doubt whether Chen was persecuted in the way he claims.
Most troubling is his daughter’s purported birth certificate, which — in contrast to Chen’s statements that he was 18 when she was born — indicates that both he and his wife were 21 years old. Even though at 21 Chen would still be too young to many under Chinese law, that does not render “immaterial” the significant doubt cast on Chen’s story by this document. Indeed, Chen’s listed age on the birth certificate calls into question the authenticity of the document itself, and thus whether Chen in fact had a child in violation of China’s family planning policies. Even if the document is authentic, it calls into question Chen’s story that he and his girlfriend were 17 or 18 when they were expelled from school and, as a result, his entire stoiy of subsequent persecution. The conflicting evidence as to their ages cannot be accounted for simply by differences in how the Chinese calculate age because there is no evidence that such calculations result in a discrepancy as great as three years.
Further, the other purported proof that Chen did, in fact, have a child fails to comport with the chronology of his testimony regarding his persecution and flight from China. According to Chen, he fled China following a visit by government officials to his home in late June 2001, and his daughter was born soon thereafter in early August. However, a purported photograph of the child at age two-months proffered by Chen depicts a child whom all parties concede appears to be much older. Chen was given an opportunity to explain this discrepancy to the IJ but could not. Because the baby’s apparent age does not coincide with his claim of escaping China just prior to ber birth, Chen’s own evidence again fails to support his story.
Moreover, in contrast to Chen’s detailed testimony about how his mother arranged for his escape, the record shows that Chen told the government agent at the Miami Airport that it was his father who made all the travel arrangements. Though this may be a “minor” inconsistency, when viewed alongside the more salient discrepancies discussed above, it further undermines Chen’s testimony regarding his alleged persecution and escape.[1] These discrepancies and the resulting overall weakness of Chen’s story support the IJ’s adverse credibility determination. See Kaur v. Gonzales, 418 F.3d 1061, 1065-67 (9th Cir.2005). Because I cannot conclude that the record compels a contrary conclusion, I would deny the petition for review.

. The record also shows that Chen made inconsistent statements about whether he obtained his false United States passport in France or Cambodia.