# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 12, 2011

No. 10-60745

Lyle W. Cayce
Clerk

RUI YANG,

Petitioner,

v.

ERIC H. HOLDER, UNITED STATES ATTORNEY GENERAL,

Respondent.

Petition for Review of an Order of the
Board of Immigration Appeals

Before HIGGINBOTHAM, DAVIS, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Rui Yang petitions for review of an order issued by the Board of Immigration Appeals ("BIA"). Yang, a citizen of China, applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), on the grounds that he fears persecution if he returns to China because his family practices Falun Gong. The immigration judge ("IJ") denied Yang's application and the BIA dismissed his appeal of the denial. We DENY the petition for review.

**I.**

Rui Yang arrived in the United States on September 2, 1998, on a J-1 visa to participate in a high-school exchange program. On January 24, 2002, his visa

No. 10-60745

was changed to an F-1 student visa so he could attend college. Because he no longer had the money to afford it, he stopped attending school on June 24, 2002.

Yang applied for asylum, withholding of removal, and protection under CAT on November 28, 2001, after learning that his father faced prosecution in China for advocating the spiritual movement Falun Gong.[1] Yang received an interview in connection with his application, but he did not hear anything after the interview. While waiting to learn the disposition of his application, Yang moved from Los Angeles to Dallas.

A notice to appear was issued on the basis of Yang's failure to comply with visa requirements and mailed to his Los Angeles address.[2] Because Yang did not receive the notice and therefore did not appear, he was ordered removed in absentia on March 10, 2006. He then filed a motion to reopen his case, arguing that he had not received a decision regarding his 2001 application for asylum. This motion was granted and his application for asylum was transferred to Dallas.

Yang appeared before an IJ on November 26, 2007, and explained that he did not have a lawyer. He received a continuance until March 17, 2008, to seek an attorney to represent him, and then, because he had not yet located an attorney by that date, he received another continuance until May 19, 2008. At his May 19 hearing, the IJ determined that Yang had "failed to maintain and comply with conditions of [his] changed status." Although Yang still had not obtained an attorney, the IJ scheduled a hearing before another IJ to allow Yang to present his case for asylum.

---

[1] Because the BIA did not address whether Yang's application for asylum was filed within the time period mandated by statute, we need not address Yang's argument that "changed circumstances" and "extraordinary circumstances" allowed him to file his application more than one year after he arrived in the United States.

[2] The administrative record shows that Yang properly notified the BIA that he had changed his address.

No. 10-60745

Yang's asylum hearing was held on October 27, 2008.  No attorney appeared on Yang's behalf before the IJ in this proceeding.  At the hearing, Yang testified that he feared Chinese authorities would arrest him if he returned to China.  Yang explained that while he himself practices Christianity and not Falun Gong, his parents practice Falun Gong.  In response to Chinese repression of Falun Gong, Yang said that he had sent pro-Falun Gong articles to his parents that his parents had distributed in China.  These materials, Yang contended, caused Chinese authorities to arrest his father.

Yang testified that he believes the Chinese authorities want to harm him because of his support for Falun Gong.  The Chinese police have not made any contact with Yang.  Nevertheless, Yang said that the authorities are aware that he transmitted pro-Falun Gong materials to his parents because the police would have found envelopes containing Yang's return address when they searched the house of Yang's family.  Yang further maintained that he fears physical harm should he return to China because of his previous support for Falun Gong. During the year in which Yang's father was detained, Yang testified, the Chinese authorities beat his father, and they released him only because Yang's uncle paid a bribe to government officials.  Yang said his father had not been detained or physically harmed by the Chinese authorities since his year-long detention ended, but his father had been required to meet periodically with government officials to reaffirm his disapproval of Falun Gong.  At the present time, according to Yang, his parents are still in China but suffer from a number of medical ailments.

During the hearing before the IJ, Yang did not present evidence specifically corroborating his testimony.  He maintained that the Chinese authorities did not issue any paperwork when they charged, arrested, or released his father because the government does not issue paperwork in cases related to Falun Gong.  While Yang speaks regularly to his parents by telephone,

3

he informs this court that he not did not seek letters from his family because he did not think they would be considered by the IJ. Yang told the IJ that he had reports corroborating his parents' medical condition, but he had left them at his apartment. When it became clear during the hearing that the IJ wanted more corroborating evidence, Yang offered to retrieve the medical reports and to gather more information. The IJ refused, however, to provide a continuance for Yang to seek letters from his family members, explaining that Yang's application had been pending for two years and he had received assistance from two attorneys in preparing the application. While Yang did not corroborate the specific aspects of his story, his testimony was corroborated in general terms by the State Department's country report on China, which details a "crackdown" on Falun Gong and cites reports of 3,000 members of Falun Gong dying from torture in the last decade in China.

On October 31, 2008, the IJ denied Yang's application for asylum, withholding of removal, and protection under CAT. In explaining his denial of Yang's application for asylum, the IJ cited Yang's failure to provide documentary evidence pertaining to his father's arrest, statements from his parents or uncle, or documentation of his contention that the Chinese authorities intended to arrest him. The IJ also ruled that Yang's "evidence fails substantively and legally, as it fails to establish a nexus between one of the 5 bases of the Act and his asserted persecution." Because Yang had failed to establish that he was eligible for asylum, the IJ further determined that he had failed to meet the higher standards for withholding of removal and protection under CAT. Finally, the IJ ruled that Yang was not entitled to voluntary departure, explaining that Yang had not requested voluntary departure and did not meet the standard for voluntary departure in any event.

The BIA affirmed the IJ's decision. The BIA ruled that Yang "did not provide sufficient documentation to corroborate his claim." While acknowledging

No. 10-60745

that Yang's contention that he was unable to provide official documentation of his arrest "may be valid," the BIA held that Yang could have provided statements from his parents "detailing the father's detention, the search of their house, and the alleged charge against [Yang]," as well as a statement from his uncle "who [Yang] claimed was the person responsible for obtaining his father's release." Such statements "were reasonably available," the BIA explained, "and it was reasonable to expect such evidence to corroborate the material aspects of [his] case." Thus, the BIA held that Yang "failed to meet [his] burden of proof because [he] has not provided sufficient evidence of the foundation of [his] claim." The BIA also ruled that Yang failed to meet the higher burden of showing that he was entitled to withholding of removal or protection under CAT. The BIA did not address the IJ's determination that Yang did not qualify for voluntary departure or that Yang had not established a well-founded fear of future persecution.

Yang subsequently petitioned this court to review the BIA's order. In support of his petition for review of the BIA's order, Yang includes a notice translated from the Chinese purporting to show that Yang faces charges of slander against the Chinese government on account of his support for Falun Gong. This notice, which post-dated the BIA's order, was not submitted to the IJ or BIA.

## II

On appeal, Yang argues that the BIA erred by concluding that he had failed to prove that he was a refugee.[3]    Specifically, he challenges the BIA's determination that his failure to provide corroborating evidence provided a sufficient rationale for the BIA to deny his application for asylum, even without

---

[3] Yang also argues that the IJ erred by holding that Yang's fear of future persecution was not on account of a protected ground of asylum. Because the BIA did not adopt this rationale for denying Yang's application, however, we do not consider it here. *See Zhu v. Gonzales*, 493 F.3d 588, 594 (5th Cir. 2007).

making a determination about his credibility. This challenge implicates two questions that we have jurisdiction to consider: first, whether, as a matter of law, it is permissible for the BIA to deny an application for asylum based solely on petitioner's failure to submit evidence corroborating his testimony; and second, whether the BIA reasonably applied this rule when considering Yang's application. Yang also contends that the BIA erred by denying his request for withholding of removal and protection under CAT.

**A.**

"We review factual findings of the BIA and IJ for substantial evidence, and questions of law de novo, giving considerable deference to the BIA's interpretation of the legislative scheme it is entrusted to administer." *Zhu,* 493 F.3d at 594 (internal quotation marks and citation omitted). We review the order of the BIA and the ruling of the IJ to the extent it influences the order of the BIA. *See Mikhael v. INS*, 115 F.3d 299, 302 (5th Cir. 1997).

**B.**

We first address whether Yang's failure to submit corroborating evidence justifies the denial of his application for asylum. To be eligible for asylum, an applicant must establish that he is a "refugee." 8 C.F.R. § 1208.13(a). A person is a refugee if he has suffered past persecution or has a well-founded fear of future persecution. *Id.* § 1208.13(b). To establish a well-founded fear of future persecution, an applicant for asylum must show a "reasonable probability" of suffering persecution if returned to his home country. *Id.* § 1208.13(b)(2)(i)(B). The applicant bears the burden of proof of establishing that he is a refugee. *Id.* § 1208.13(a).

The BIA determined that Yang did not carry his burden of proving that he is a refugee because he did not provide reasonably available evidence corroborating his testimony. This determination was based on the BIA's interpretation of 8 C.F.R. § 1208.13(a), which reads as follows:

No. 10-60745

> The burden of proof is on the applicant to establish that he or she is a refugee as defined in section 101(a)(42) of the Act. The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration.

*Id.*[4]    The BIA's interpretation of 8 C.F.R. § 1208.13(a) is based on its determination in *Matter of S-M-J-*, 21 I. & N. Dec. 722, 724-26 (BIA 1997). In *Matter of S-M-J-*, the BIA held that denial of an application for asylum can be based on the absence of reasonably available corroborating information for the applicant's testimony, even if the BIA has no reason to believe that the applicant lacked credibility. The BIA wrote that even credible testimony might not satisfy the applicant's burden of proof because testimony is only "part of the body of evidence which is intertwined and considered in its totality." 21 I. & N. Dec. at 729. The government argues that this court should defer to the BIA's reasoning in *Matter of S-M-J-*.

Yang responds that credible testimony should be sufficient to carry a petitioner's burden of proof in an application for asylum. In support of his argument, he relies on the language of 8 C.F.R. § 1208.13(a), and a Seventh Circuit case, *Georgis v. Ashcroft*, 328 F.3d 962, 969 (7th Cir. 2003).

Because we defer to the BIA's reasonable interpretations of its own regulations, *Zhu*, 493 F.3d at 594, we must decide whether the BIA's interpretation of 8 C.F.R. § 1208.13(a) is reasonable. The question is one on which circuits have divided. The Ninth Circuit held that the BIA cannot reject credible testimony on the grounds that it was uncorroborated, relying on three separate lines of Ninth Circuit precedent that, according to the court, mandated its conclusion. *See Ladha v. INS,* 215 F.3d 889, 899-901 (9th Cir. 2000), *overruled on other grounds by Abebe v. Mukasey*, 554 F.3d 1203, 1208 (9th Cir.

---

[4] The parties agree that the REAL ID Act, which explicitly authorizes the BIA to require corroborating information even when applicants for asylum are credible, does not govern Yang's burden of proof because Yang applied for asylum in 2001, before Congress passed the REAL ID Act. *See Matter of S-B-*, 24 I. & N. Dec. 42 (BIA 2006).

2009). The Second, Third, Sixth, and Eighth Circuits, conversely, have all held that the BIA's construction of 8 C.F.R. § 1208.13(a) in *Matter of S-M-J-* was reasonable. *See Diallo v. INS,* 232 F.3d 279, 285-86 (2d Cir. 2000); *Abdulai v. Ashcroft,* 239 F.3d 542, 554 (3d Cir. 2001); *Dorosh v. Ashcroft,* 398 F.3d 379, 382 (6th Cir. 2004); *El-Sheikh v. Ashcroft,* 388 F.3d 643, 647 (8th Cir. 2004). The Seventh Circuit permits the BIA to require corroboration of testimony in certain circumstances but prohibits the BIA from rejecting applications for asylum based on the applicant's failure to provide corroborating evidence if the testimony is "specific, detailed, and convincing." *Compare Gontcharova v. Ashcroft,* 384 F.3d 873, 877 (7th Cir. 2004) ("Nevertheless, we do not reject the BIA's corroboration rule out of hand.") *with Dawoud v. Gonzales,* 424 F.3d 608, 612-13 (7th Cir. 2005) ("The regulation, in our view, cannot bear an interpretation that would exclude all possibility of an applicant's relying exclusively on credible but uncorroborated testimony, so long as that testimony is specific, detailed, and convincing.").[5]

Like most other circuits to have considered this question, we disagree with Yang's argument that the BIA can never require credible applicants for asylum to corroborate their testimony. The Third Circuit persuasively explained why such an interpretation is not supported by the language of the regulation:

> The regulation states that credible testimony may be enough to meet the applicant's burden of proof. Saying that something may be enough is not the same as saying that it is always enough; in fact, the most natural reading of the word 'may' in this context is that credible testimony is neither per se sufficient nor per se insufficient.

*Abdulai,* 239 F.3d at 552. Given the commonly understood meaning of the word "may," it cannot be that all applicants who provide credible testimony have

---

[5] While *Georgis v. Ashcroft,* the Seventh Circuit case cited by Yang, does note that corroborating evidence is not always necessary for applicants for asylum, the court's decision to remand was based on the applicant's submission of evidence specifically corroborating her testimony. *See Georgis,* 328 F.3d at 969. Accordingly, the decision does not help Yang.

satisfied their burden of proof.

We still must decide, however, whether it is reasonable for the BIA to interpret the regulation such that the failure to provide corroborating proof is "dispositive" and relieves it of any obligation to make a credibility determination. In response to Yang's argument that his testimony alone was sufficient to carry his burden of proof, the BIA wrote that Yang has "failed to meet [his] burden of proof because [he] has not provided sufficient evidence of the foundation of his claim." This sentence includes a footnote that describes Yang's failure to corroborate his testimony as "dispositive of the appeal." Accordingly, the BIA did not make a determination regarding Yang's credibility. The BIA's view that a failure to corroborate testimony is "dispositive" seems, at first glance, to be in tension with the language of 8 C.F.R. § 1208.13(a), which explicitly allows applicants for asylum to establish their entitlement to relief without corroborating their credible testimony. This language seems to imply that the first step for the BIA in assessing applications for asylum should be to determine whether the applicant's testimony, by itself, satisfies the applicant's burden of proof. Despite this language, the BIA does not assess the credibility of an applicant's testimony–and therefore does not decide whether the applicant's testimony satisfies the burden of proof by itself–unless the BIA determines that corroborating evidence is not reasonably available. In effect, the BIA's interpretation reads in an additional clause to the language of 8 C.F.R. § 1208.13(a): "The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration, *but only if corroboration is not reasonably available to the applicant.*"

We cannot say that this interpretation is unreasonable. Two circuits have implicitly rejected this iteration of the BIA's corroboration rule by remanding due, in part, to the BIA's failure to make a credibility determination. *See Diallo*, 232 F.3d at 287; *Ikama-Obambi v. Gonzales*, 470 F.3d 720, 725 (7th Cir. 2006).

We disagree with these decisions because making an explicit credibility determination is not necessary to effectuate the meaning of the regulation. *Cf. Dorosh*, 398 F.3d at 382 (holding that court need not address BIA's credibility determination where applicant for asylum did not sufficiently corroborate her testimony). According to the BIA's interpretation of 8 C.F.R. § 1208.13(a), applicants are eligible for asylum based solely on credible testimony only if corroborating evidence is not reasonably available. Our conclusion that this interpretation is reasonable is supported by Congress's codification of a similar rule, *see* 8 U.S.C. § 1158(b)(1)(B)(ii), and by the importance we ascribe to IJs' ability to verify applicants' testimony. *See Matter of S-M-J-*, 21 I. & N. at 730-31. Because the BIA's interpretation permits it to deny applications for asylum based solely on their failure to provide reasonably available corroborating evidence, we would elevate form over substance if we required the BIA to make a credibility determination when it decides that an applicant failed to provide reasonably available corroborating evidence.

Further, our circuit precedent supports the BIA's interpretation. We have implicitly approved of the BIA's requirement that applicants for asylum submit information corroborating their testimony. *Zhao v. Gonzales*, 404 F.3d 295, 304-05 (5th Cir. 2005) (describing "requirement" that applicants for asylum submit corroborating information); *see also Mutagwanya v. Gonzales*, 129 Fed. App'x 899, 900-01 (5th Cir. 2005) ("When it is reasonable to expect that such evidence exists, an applicant should provide corroborating evidence relevant to the specifics of his allegations, or he should provide an explanation of why he did not provide such evidence."). Our implicit approval of the "requirement" that applicants for asylum submit corroborating evidence further implies that we approve of rejecting applicants for the sole reason that they do not meet this requirement. Additionally, in an unpublished opinion, we rejected an applicant's argument that the BIA's failure to make a credibility determination with respect

to her testimony necessitated remand of her application for asylum.  *See Mei He v. Holder*, No. 10-60915, 2011 WL 4436627, at *2 (5th Cir. 2011) (unpublished).  Accordingly, the BIA need not make a credibility determination when it determines that corroborating evidence is reasonably available to the applicant but was not submitted.

## C.

Having determined that the BIA reasonably interpreted its own regulations in *Matter of S-M-J-* when it ruled that applicants can be required to provide reasonably obtainable corroborating evidence even when their testimony is credible, we next consider whether that rule was appropriately applied to Yang's application.

The BIA based its determination that Yang did not provide reasonably available corroborating evidence on Yang's failure to provide a letter from his parents detailing their detention and the search of their house, and a letter from Yang's uncle detailing how Yang's father was released.  Yang argues that he did not obtain a letter from his parents because he "(generally) always communicated with his parents by telephone."  He further contends that he did not know that such letters would have helped his application, but he might have known better if he had been represented by a lawyer.[6]

Our authority to review determinations with respect to availability of evidence is limited.  According to the REAL ID Act, "No court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence unless the court finds a reasonable trier of fact is

---

[6] Yang also explains that he attempted to submit medical records to the BIA, but these records were not accepted because he did not submit them to the IJ.  He explains that he left the medical records at home the day of his hearing, and that they had not been translated prior to the hearing.  We need not consider these contentions because Yang's failure to submit corroborating medical records was not a basis for the BIA's denial of his application.

compelled to conclude that such corroborating evidence is unavailable."[7]    8 U.S.C. § 1252 (b)(4).  Thus, we must consider whether the IJ was "compelled to conclude" that the letters from Yang's family members were unavailable. *See id.*

We are not convinced that the IJ here was compelled to conclude that letters from Yang's family members were unavailable.  In fact, Yang's brief does not argue that letters from Yang's family members were unavailable, or even that they were especially difficult to obtain.  While Yang argues that he generally speaks with his parents by telephone, this does not establish that he is unable to obtain letters from them.  He does not explicitly address whether a letter from his uncle was reasonably available in his briefing.  He instead argues that he did not realize he was supposed to present letters from his family members in his application because he was not represented by counsel.  He does not cite, and our research does not uncover, cases supporting the proposition that a lack of representation in an asylum proceeding excuses the duty of applicants for asylum to satisfy their burden of proof.[8]

To the extent that Yang argues that he would have obtained the required evidence if the IJ had granted him more time, he effectively contends that the IJ abused his discretion by failing to grant Yang a continuance to obtain more evidence.  Yang's failure to raise this argument to the BIA, however, constitutes a failure to exhaust administrative remedies and deprives us of jurisdiction to consider this argument. *See Omari v. Holder*, 562 F.3d 314, 318 (5th Cir. 2009).  In his briefing to the BIA, Yang wrote, "Again, perhaps if Mr. Yang had had the

---

[7] While the REAL ID Act does not govern Yang's burden of proof, it does govern our standard of review with respect to the IJ's determination regarding corroborating evidence. *See* REAL ID Act of 2005 § 101(e), Pub. L. 109-13, 119 Stat. 231 (providing that amended standard of review set forth in 8 U.S.C. § 1252(b)(4) takes effect on the date the REAL ID Act was enacted).

[8] While the IJ noted that Yang had the assistance of two lawyers prior to his October 27, 2008, hearing, there is no evidence that these lawyers assisted Yang with the application for asylum that the IJ denied on October 31, 2008.

benefit of having had a lawyer for his hearings, he might have known well enough to have gotten letters from his parents . . . ." The manner in which Yang raised this argument did not exhaust his administrative remedies. As we have explained, "the purpose of the statutory exhaustion requirement is to allow the BIA the opportunity to apply its specialized knowledge and experience to the matter and to resolve a controversy or correct its own errors before intervention." *See Lopez-Dubon v. Holder*, 609 F.3d 642, 644 (5th Cir. 2010) (quoting *Sidabutar v. Gonzales*, 503 F.3d 1116, 1122 (10th Cir. 2007)) (internal quotation marks and citations omitted). Here, the phrasing of Yang's brief was not sufficiently specific to provide a reasonable opportunity for the BIA to correct the agency's decision before judicial intervention.[9] Instead of requesting a continuance, Yang's argument suggests that he is urging the BIA to alter the standard for what evidence is considered "reasonably available" in cases of applicants proceeding *pro se*. Accordingly, we cannot conclude that Yang exhausted his administrative remedies and we do not have jurisdiction to consider this argument.

## D.

In addition, Yang raises a number of other arguments over which we do not have jurisdiction. Yang argues that this panel should consider evidence that he submits to this court for the first time on appeal. He informs this court that he has also submitted the evidence to the BIA in a motion to reopen the case. Because the BIA has not yet ruled on this motion, however, Yang has not exhausted his administrative remedies. *See Omari*, 562 F.3d at 318. Accordingly, this court does not have jurisdiction to consider Yang's newly submitted evidence. *Id.* For the same reason, we also reject Yang's request for

---

[9] Yang was more specific in his argument to the BIA and to this court that he should have received more time to retrieve corroborating medical records from his residence. We need not address this issue because the BIA's decision was not based on Yang's failure to provide these medical records.

voluntary departure.  Because he failed to seek voluntary departure before the IJ, Yang failed to exhaust his administrative remedies.  *See id.*

## E.

Because we deny Yang's petition for review with respect to his application for asylum, it follows that we also deny his petition for review with respect to his application for withholding of removal, which has a more demanding standard than asylum.  *See* 8 U.S.C. 1231(b)(3) (restricting withholding of removal to immigrants whose life or freedom the Attorney General decides "would be threatened in that country . . .").  Given Yang's failure to argue at any point in his brief that he is more likely than not to be tortured should he return to China, we also hold that he has not carried his burden of proving entitlement to relief under CAT.  *See* 8 C.F.R. §§ 1208.16(c), 1208.18(a); *Dardar v. Lafourache Realty Co., Inc.*, 985 F.2d 824, 831 (5th Cir. 1993) ("Questions posed for appellate review but inadequately briefed are considered abandoned.") (citations omitted).  While we "liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel, *pro se* parties must still brief the issues and reasonably comply with the standards of Rule 28."  *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995) (citation omitted).

## III.

For the foregoing reasons, we DENY the petition.