# United States Court of Appeals
## For the First Circuit

No. 12-1685

GUO SHOU WU,

Petitioner,

v.

ERIC H. HOLDER, JR.,
UNITED STATES ATTORNEY GENERAL,

Respondent.

---

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

---

Before

Lynch, Chief Judge,
Torruella and Thompson, Circuit Judges.

---

Wei Jia and Law Office of Wei Jia, on brief for petitioner.
Kristofer R. McDonald, Office of Immigration Litigation,
Department of Justice, Civil Division, Stuart F. Delery, Principal
Deputy Assistant Attorney General, Civil Division, and Leslie
McKay, Assistant Director, Office of Immigration Litigation, on
brief for respondent.

---

December 20, 2013

---

**TORRUELLA, <u>Circuit Judge</u>.** Guo Shou Wu, a native and citizen of China, petitions for review of an order of the Board of Immigration Appeals (BIA) dismissing his appeal of an order of an Immigration Judge (IJ) denying his applications for relief from removal. For the reasons set forth below, his petition is denied.

## I. <u>Background</u>

Wu asserted the following facts in support of his claim. He is married, and his wife still lives in China. In accordance with China's family planning program, after the birth of their first child, Wu's wife received, against her will, an intra-uterine device. Wu and his wife consulted a private doctor and, without the consent of family planning officials, had the device removed. The couple became pregnant for a second time, and, despite efforts to conceal the pregnancy, Wu's wife was subjected by family planning officials to a forced abortion. Wu and his wife then moved to a remote area, where she again became pregnant and gave birth to their second child.

When it came time to register their children with the government, over Wu's pleas and objections, family planning officials detained and forcibly sterilized his wife as punishment for having had an unsanctioned second child. Family planning officials also fined the couple 5000 renminbi. Thereafter, Wu remained in China without incident for nine years, at which point

he illegally departed the country. He illegally entered the United States and was charged with removability.

Appearing before an IJ in New York, Wu conceded removability but requested relief from removal in the form of asylum, withholding of removal, and protection under the Convention Against Torture (CAT). To be granted asylum, Wu had to show that he was unable or unwilling to return to China because had suffered past persecution, or had a well founded fear of future persecution, on account of his race, religion, nationality, membership in a particular social group, or political opinion. See 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A). To be granted withholding of removal, Wu had to show that upon removal to China he would more likely than not face future persecution on account of one of those bases. See id. § 1231(b)(3)(A); 8 C.F.R. § 208.16(b)(2). Because the "more likely than not" -- or "clear probability" -- standard for withholding of removal is more stringent than that for asylum, a petitioner unable to satisfy the asylum standard necessarily fails the withholding of removal standard as well. See Mediouni v. I.N.S., 314 F.3d 24, 27 (1st Cir. 2002). To be granted protection under CAT, Wu had to show that upon removal to China he would more likely than not be tortured. See 8 C.F.R. § 208.16(c)(2).

Wu's applications for relief were denied, and Wu's subsequent appeal to the BIA was dismissed. Wu petitioned the Second Circuit for review, but the petition was dismissed in

-3-

accordance with a stipulation between the parties to vacate the BIA's decision and to remand the matter for a new hearing in which an IJ would consider any new evidence in addition to the evidence from the previous hearing.

The matter was assigned to an IJ in Boston. The IJ discredited Wu's testimony, but went on to address the merits of Wu's applications as if he had testified credibly. In that regard, the IJ found that Wu failed to establish either past persecution or a well founded fear of future persecution, and thus was entitled to neither asylum nor, a fortiori, withholding of removal. The IJ also found that Wu failed to establish a clear probability of future torture, and thus was not entitled to protection under CAT. On appeal the BIA concluded that Wu's applications for relief were governed by the REAL ID Act, which allows the IJ to make credibility determinations "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." Pub L. No. 109-13, Div. B, 119 Stat. 231 (codified at 8 U.S.C. § 1158(b)(1)(B)(iii)). The BIA also concluded that Wu failed to demonstrate past persecution, a well founded fear of future persecution, or a clear probability of future torture, and thus was not entitled to relief from removal. Accordingly, the BIA dismissed the appeal. This petition followed.

## II. <u>Discussion</u>

Wu petitions for review on the ground that the BIA erred in concluding that (i) the REAL ID Act applied, (ii) Wu failed to demonstrate past persecution, and (iii) Wu failed to demonstrate a well founded fear of future persecution.[1]

## A. <u>Standard of Review</u>

We review the BIA's legal conclusions de novo and its factual determinations under the substantial evidence standard. <u>Soeung</u> v. <u>Holder</u>, 677 F.3d 484, 487 (1st Cir. 2012).  Under this deferential standard, we must uphold the BIA's determination unless the record not only supports, but compels the contrary conclusion. <u>López de Hincapié</u> v. <u>Gonzales</u>, 494 F.3d 213, 218 (1st Cir. 2007).

## B. <u>REAL ID Act</u>

Wu first asserts, and the Government concedes, that the BIA erred in concluding that the REAL ID Act applied to Wu's case. The IJ had found that the Act did not apply, and the BIA affirmed the IJ's denial of relief.  Nevertheless, the BIA said the Act

---

[1]  As noted above, the BIA's conclusions that Wu failed to demonstrate either past persecution or a well founded fear of future persecution allowed the BIA to dispose of both his asylum claim and his withholding of removal claim.  The BIA also concluded that Wu failed to demonstrate a clear probability of torture, agreeing with the IJ's finding in this regard and noting that Wu did not specifically challenge that finding before the BIA.  Wu does not appear to specifically challenge that finding before us either: While his brief references CAT, he does not argue that any future harm he may suffer would rise to the level of torture. Thus, we deem his CAT claim waived. <u>See</u> <u>Hana</u> v. <u>Gonzales</u>, 503 F.3d 39, 43 n.3 (1st Cir. 2007) ("Because this claim is perfunctory and unaccompanied by developed argumentation, we deem it waived.").

-5-

applied because it believed, mistakenly, that Wu filed his asylum application after May 11, 2005.  In fact, Wu filed his application in 2002, so the Act does not apply.  See In re S-B-, 24 I. & N. Dec. 42, 43 (BIA 2006).

But Wu does not explain how this error affected his case.[2]  After all, the BIA's order did not depend on any REAL ID Act provisions, which, in this context, merely provide a framework for the trier of fact to assess credibility, see id. at 42-43. Indeed, the BIA assumed the credibility of Wu's testimony, but went on to conclude that Wu failed to establish past persecution, a well founded fear of future persecution, or a clear probability of future torture.  So the error was harmless.  See Jaya v. Gonzales, 169 F. App'x 596, 598 (1st Cir. 2005) (invoking harmless error doctrine in instance where BIA arguably erred).

---

[2]  The REAL ID Act applies to applications filed on or after May 11, 2005.  See Jabri v. Holder, 675 F.3d 20, 24 (1st Cir. 2012). In these cases, "a trier of fact may base an adverse credibility determination on any inconsistency in the record that has a bearing on the petitioner's veracity, 'without regard to whether [the] inconsistency . . . goes to the heart of the applicant's claim.'" Id. (alteration and omission in original) (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)).  In cases where the application was filed before May 11, 2005, however, "an adverse credibility determination may not be predicated on inconsistencies in an applicant's testimony that do not go to the heart of the applicant's claim." Lin v. Mukasey, 521 F.3d 22, 26 (1st Cir. 2008).

## C. **Past Persecution**

Wu next asserts that he is entitled to asylum because he was persecuted for resisting China's coercive population control program -- that is, he was persecuted on account of his political opinion. Assuming for the sake of argument that Wu demonstrated that he had resisted a coercive population control program, the BIA nevertheless determined that Wu failed to show that he had been persecuted. We cannot say that the record compels the contrary conclusion.

In his brief, the only example of persecution that Wu provides is that he was "deprived of his right, freedom and liberty to father additional children with his wife." To support the proposition that this deprivation amounts to persecution, Wu directs us, not to any controlling authority, but to the Ninth Circuit's decision in Jiang v. Holder, 611 F.3d 1086 (9th Cir. 2010). But Jiang did not hold that deprivation of the right to father children, by itself, amounts to persecution. Rather, the Ninth Circuit held that the forced abortion or sterilization of a noncitizen's spouse is but one factor that can indicate persecution. Id. at 1095. There, the noncitizen "offered substantial evidence of additional persecution in support of his claim," such as being (i) expelled from school, (ii) detained by authorities, (iii) forced to pay a heavy fine to be released from detention, (iv) subject to near arrest by police at his home on the

morning of his wedding, and (v) forced to flee his hometown to hide from authorities. Id. at 1095-96.

Here, by contrast, Wu mentions only the deprivation of his ability to father more children. And even if we were to add to that alleged deprivation the other harms that Wu arguably suffered as a result of his resistance, we could not conclude that the record compels a finding of past persecution. True, in 1992, Wu was fined 5000 renminbi (which, according to the Government, amounts to roughly $800 today) for fathering an unsanctioned second child. But economic disadvantage must be severe and deliberate to rise to the level of persecution, see Vanchurina v. Holder, 619 F.3d 95, 99 (1st Cir. 2010); In re T-Z-, 24 I. & N. Dec. 163, 173-75 (BIA 2007), and the record does not indicate that the fine caused Wu severe economic disadvantage.

Wu seems to argue that, if we refuse to hold that the forced abortion and sterilization of his wife amounts to persecution of him, we will somehow be punishing individuals like his wife, who may plan to follow their spouses in fleeing alleged persecution and seeking asylum in the United States. But this argument was never made before the BIA and thus is beyond our review. See Makhoul v. Ashcroft, 387 F.3d 75, 80 (1st Cir. 2004) ("[T]heories not advanced before the BIA may not be surfaced for the first time in a petition for judicial review . . . .").

## D. Well Founded Fear of Future Persecution

Finally, Wu claims to have a well founded fear of future persecution in response to either his resistance to China's coercive population control program or his illegal departure. The BIA concluded otherwise, and we cannot say that the record compels the contrary conclusion.

### 1. Resistance to Coercive Population Control Program

In rejecting Wu's claim that he has a well founded fear of future persecution as a result of his resistance to China's coercive population control program, the BIA observed that Wu remained in China for nine years without harm after his last encounter with family planning officials, which occurred at the time of his wife's forced sterilization. Wu now attacks that observation as "ludicrous" and asks what further action could have been expected of him. Wu seems to miss the point. The BIA was not chastising Wu for failing to offer further resistance to the population control program. Rather, the BIA was explaining that Wu's alleged fear of future persecution for the resistance he did offer was not well founded in light of the Chinese government's apparent lack of interest in Wu during the nine years between his resistance and departure. Wu's evidence falls short of compelling the contrary conclusion.

Wu points out that the record contains a 2008 State Department report that documents the abuse of a prisoner who

protested China's family planning program. And Wu notes that the record also includes testimony of an individual who, in a 1998 hearing before the House Subcommittee on International Operation and Human Rights, expressed fear of returning to China because she had violated the one-child policy. But in light of the fact that the record also reflects that Wu lived in China for nearly a decade without incident, we cannot say that these sources compel the conclusion that Wu has a well founded fear of future harm. See, e.g., Pan v. Gonzales, 445 F.3d 60, 62 (1st Cir. 2006) (finding no well founded fear of persecution where noncitizen "remained in China for two and a half years following the [alleged resistance], [and] was never punished or persecuted because of her resistance").

## 2. **Illegal Departure**

Wu claims that he fears future persecution, in the form of arrest and loss of income, in response to his illegal departure. The BIA concluded that Wu failed to demonstrate either that he was likely to be harmed or that any harm he suffered would rise to the level of persecution. Wu says that the IJ failed to comply with the Second Circuit's mandate to consider the evidence from Wu's prior removal proceedings. But nothing in the BIA's decision indicates that it failed to consider any of Wu's evidence.

That evidence consists partly of Wu's own testimony. It is true that, at his initial hearing, he said that based on the experiences of his relatives and friends in New York, those who

-10-

departed China illegally would be fined and imprisoned upon their return. And admittedly, at his remand hearing, Wu reiterated that he feared that he would be arrested and sentenced and that his family would be harmed physically, emotionally, and financially. But the record neither indicates that the BIA ignored Wu's testimony, nor compels the conclusion that his fears are well founded or that any future harm would amount to persecution.

As Wu points out, in addition to his testimony, the evidence includes 1998 and 2000 State Department reports documenting the poor conditions and abuse that mar the facilities in which those being repatriated are sometimes detained. But while these reports may well <u>support</u> a conclusion contrary to the BIA's, we cannot say that they <u>compel</u> that conclusion, at least in part because of their out datedness.

### III. <u>Conclusion</u>

For the reasons set forth above, Wu's petition for review is **DENIED**.