# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 1, 2020

Lyle W. Cayce
Clerk

No. 19-60207

Mirta C. Cordero Frances, *also known as* Mirta Caridad Cordero Frances,

*Petitioner*,

*versus*

William P. Barr, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A215 615 316

Before Owen, *Chief Judge*, and King and Engelhardt, *Circuit Judges*.
Per Curiam:*

Mirta Cordero Frances ("Cordero Frances") petitions for review of an order issued by the Board of Immigration Appeals ("BIA"). Cordero Frances, a native and citizen of Cuba, applied for asylum, withholding of removal, and protection under the Convention Against Terror ("CAT").

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-60207

The Immigration Judge ("IJ") denied Cordero Frances's application, the BIA dismissed her appeal of the denial, and she was removed from the United States on June 7, 2019. We GRANT the petition for review, VACATE the BIA's decision, and REMAND with instructions to reconsider Cordero Frances's application for asylum and protection under the CAT.

## I.

Without any entry documents, Cordero Frances applied for admission to the United States at the El Paso Port of Entry in May 2018. The Department of Homeland Security served her with a Notice to Appear that charged her as removable because she had no valid entry documents. In her preliminary hearing before an IJ, she expressed her wish to apply for asylum. Accordingly, the IJ provided her an asylum application and explained the requirements. He informed Cordero Frances that she must prepare and attach to her asylum application "a written declaration of facts about what happened to [her] in [her] home country that forced [her] to leave or makes it impossible for [her] to return." The IJ added that in most cases the law requires that applications be supplemented "with other reasonably available evidence," such as affidavits from witnesses, friends, or family members who are familiar with the facts of the applicant's case. But, the IJ clarified, "[l]etters are not sufficient." "Because only sworn testimony is admissible in court[,] . . . . [i]t must be an affidavit."

At her subsequent merits hearing, Cordero Frances appeared *pro se* and submitted her application for asylum, withholding of removal, and protection under the CAT. In support of her application, she proffered a declaration of facts in which she described decades of mistreatment—including threats, fines, beating, surveillance, and police detention—inflicted on her by the Cuban government because of her political activism. She also provided personal identification documents, publications detailing general

conditions in Cuba, and three letters from Cuban friends describing her political activism and related persecution by the Cuban government. Significantly as it turned out, the corroborating letters were not in affidavit form and did not state that they were made under penalty of perjury—although they did employ formal language saying that they "attest[ed]" or gave "testimony."

The IJ denied Cordero Frances's application, concluding that "the court must and will order her removal." He pronounced his decision orally and subsequently issued a written decision that contained some modifications but conveyed the same result. Repeatedly, he indicated that he found her account reliable, noting that he "ha[d] no credibility concerns in particular" and that he thought she was "being credible in [her] statements." In his written opinion, he stated that she "ha[d] established prima facie eligibility for asylum" and that she "ha[d] testified credibly in the court's opinion."

Notwithstanding that assessment of her credibility, the IJ determined that Cordero Frances's corroborating letters did "not meet the necessary legal requirements for testimony under the federal regulations, which require[] . . . all testimony to be sworn or made under penalty of perjury." Accordingly, he determined that "the court will not provide them any evidentiary . . . weight." Because Cordero Frances "did not corroborate her testimony with reasonably available corroborative evidence," he denied her application "for that reason[] alone." In reaching this conclusion, the IJ relied on *Yang v. Holder*, 664 F.3d 580 (5th Cir. 2011), which he understood to require "that [an applicant] ha[s] to support an application for asylum with reasonably available corroborative evidence," and "by law" all such evidence "has to be under oath or under something similar to oath." He told Cordero Frances that *Yang* "mandates" this evidentiary standard and, "for that reason," he concluded "I have to deny your application. I don't know

what else to do." But he again emphasized: "I am only denying your application because you don't meet the required burden of proof under a federal circuit court decision called *Rui Yang v. Holder*. That's the only reason I'm denying the application."

Cordero Frances appealed the IJ's decision to the BIA. She contended that the IJ committed legal error by (1) determining that she was legally required to submit corroborating evidence even though the IJ found her account credible and (2) refusing to consider the supporting letters she submitted to corroborate her application for relief from removal because there is no requirement that such corroborating evidence be in affidavit form or made under penalty of perjury.

The BIA found these arguments unavailing and affirmed the IJ's decision. Despite the credibility of Cordero Frances's testimony, the BIA determined that she failed to satisfy her burden of producing reasonably available corroborating evidence. First, the BIA interpreted the IJ's decision to require corroborating evidence of otherwise credible testimony as a permissible exercise of his discretion. Second, it noted that "[w]hile [Cordero Frances] correctly observes that there is no requirement under the Act and its implementing regulations for evidence to be presented in any particular format, an Immigration Judge has broad discretion to accept and assign evidentiary weight to evidence." And, in the BIA's view, the IJ simply declined to assign evidentiary weight to the letters because they were not in affidavit form or made under penalty of perjury, which constituted a discretionary decision he was permitted to make. In sum, the BIA concluded that the IJ was entitled to make discretionary decisions about these matters and that he chose to do so here. Cordero Frances filed a timely petition for review of the BIA's order.

No. 19-60207

## II.

We generally review only decisions of the BIA. *Zhu v. Gonzales*, 493 F.3d 588, 593 (5th Cir. 2007). But when the IJ's ruling affects the BIA's decision, as it does here, we review the decisions of both the BIA and the IJ. *Cantarero-Lagos v. Barr*, 924 F.3d 145, 149 (5th Cir. 2019). We review factual findings for substantial evidence, and we review conclusions of law *de novo*, according deference to the BIA's reasonable interpretations of immigration statutes and regulations. *Id.*

## III.

Cordero Frances contends that the IJ legally erred by applying the wrong standard of proof and refusing to consider the letters she submitted to corroborate her application. She asserts that the IJ denied her application under the mistaken belief that, although he was satisfied of her credibility, she was nonetheless required to submit corroborating evidence to support her application and that, if her corroborating evidence took the form of letters, the letters must be in affidavit form or made under penalty of perjury. Furthermore, she claims that the BIA erred when it determined that the IJ merely exercised his discretion not to afford evidentiary weight to the letter evidence and affirmed the IJ's erroneous application of the law.

An applicant for asylum bears the burden of demonstrating eligibility for relief. 8 U.S.C. § 1158(b). Sometimes the applicant's testimony alone is enough to sustain her burden of proof. 8 U.S.C. § 1158(b)(1)(B)(ii) (stating that "[t]he testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration"). If, however, an applicant's testimony is credible but insufficient to satisfy the burden of proof, the IJ may require the submission of reasonably available corroborating evidence, *id.*, and failure to comply can be fatal to a claim for relief, *Avelar-Oliva v. Barr*, 954 F.3d 757, 764 (5th Cir. 2020).

But nothing in the statutes or regulations governing asylum proceedings sets forth any specific form requirements that corroborating evidence must meet.  Indeed, rules governing the admissibility of evidence in asylum proceedings are, if anything, more relaxed than in other contexts—and for intuitive reasons: those who genuinely need asylum are often acutely disadvantaged in their ability to obtain carefully documented and authenticated evidence.  Accordingly, "the sole test for admission of evidence at a deportation proceeding is whether it is probative and its admission is fundamentally fair," and "[t]he rules of evidence, including those that exclude hearsay, do not govern." *Bouchikhi v. Holder*, 676 F.3d 173, 180 (5th Cir. 2012) (internal quotation marks and citations omitted).  Thus, while lack of formal authentication could affect the evidentiary weight afforded, *see Dube v. Holder*, 553 F. App'x 420, 421 (5th Cir. 2014) (noting that unsworn and typed letters without any indication of authenticity may be of "dubious" evidentiary value), it is no categorical bar to admissibility,  *see Qiu v. Sessions*, 870 F.3d 1200, 1205 (10th Cir. 2017) ("There is no statutory support for the BIA's contention that documents at immigration hearings must be sworn."); *Zuh v. Mukasey*, 547 F.3d 504, 509 (4th Cir. 2008) ("[N]o statute or case law suggests that documents at immigration hearings must be sworn.  Rather, without so much as pausing to note the unsworn nature of a document, numerous courts . . . have relied on such documents when considering claims of asylum applicants.").

In this proceeding, the IJ concluded that *Yang v. Holder* required Cordero Frances to support her testimony with reasonably available corroborating evidence and that any corroborating letters must be in affidavit form or made under penalty of perjury.  In *Yang*, we upheld the BIA's interpretation of 8 C.F.R. § 1208.13(a) to allow an IJ to require reasonably available corroborating evidence even where there was credible testimony and even without first determining credibility.  664 F.3d at 584-86.  We also

noted that a similar rule had been codified at 8 U.S.C. § 1158(b)(1)(B)(ii). *Id.* at 586. In short, an applicant's uncorroborated credible testimony may be enough to satisfy her burden of proof, but the IJ retains discretion to require the submission of reasonably available corroborating evidence if he determines that her testimony is insufficient. Accordingly, the IJ acted within his discretion to require Cordero Frances to supply such corroborating evidence, although the record plainly suggests he did not understand that doing so is not mandated in every case so long as the IJ is satisfied that the applicant's testimony is credible, persuasive, and specific enough to demonstrate refugee status. *See* 8 U.S.C. § 1158(b)(1)(B)(ii).

Nonetheless, the IJ did err by refusing to admit the letters merely because they were not in affidavit form or made under penalty of perjury.[1] In this respect, he misplaced his reliance on *Yang* because nothing in that decision requires corroborating letters to take a particular format as a criterion for admissibility. *See Yang*, 664 F.3d at 584-86. In its opinion on appeal, the BIA expressly agreed that there is no requirement to present corroborating evidence in a particular format, but it affirmed the IJ's decision by characterizing it as an exercise of his discretion not to assign evidentiary weight to the letters. We disagree with that portrayal of the IJ's legal conclusion.

Refusing to admit evidence is very different from assigning that evidence limited or even no weight because evidence that cannot be considered cannot be weighed. The IJ did not simply assign the letters no evidentiary weight: he refused to admit them altogether, insisting that he was precluded by law from considering them. To the extent that he made any

---

[1] Because we conclude that the IJ legally erred by dismissing Cordero Frances's application on the basis of an incorrect evidentiary standard, we need not consider her contention that she was deprived of due process.

credibility determination, his statements indicate that he considered Cordero Frances's account credible and that he denied her application *only* because he was obligated to do so. Furthermore, he stated that the letters "d[id] not meet the necessary legal requirements for testimony;" that "[b]y law, all testimony has to be under oath or something similar to oath;" that the letters "d[id not] qualify as testimony and they d[id not] qualify as supportive evidence;" and that the letters "d[id not] exist for evidentiary reasons." Accordingly, he treated the letters as if they were not before him. That constitutes a refusal to admit evidence, not a discretionary assignment of minimal credibility. In any event, the record plainly suggests that not even he understood his actions to involve any discretionary weighing of evidence. And it cannot be said that he made a discretionary decision where he did not understand his decision to be discretionary.

The IJ excluded the letters without addressing the sole test for admission of evidence: he never suggested that the evidence was not probative or that its admission would be somehow unfair. *See Bouchikhi*, 676 F.3d at 180. Moreover, he applied his heightened admissibility standard as a dispositive criterion to deny Cordero Frances's application. His statements suggest that, absent the erroneous evidentiary rule, he may well have granted Cordero Frances's application. Because we cannot determine the complete extent to which the IJ's legal error refusing to consider the corroborating letters influenced the final determination as to Cordero Frances's eligibility for asylum or protection under the CAT, the IJ's and the BIA's rulings cannot stand.

VACATED and REMANDED.